| | |
|---|---|
| 47 | 193 |
| 67 | 288 |
| 47 | 193 |
| 68 | 414 |
| 47 | 193 |
| 74 | 577 |
| 47 | 193 |
| 107 | 358 |
| 108 | 606 |
| 47 | 193 |
| 119 | 470 |
| 47 | 193 |
| 123 | 73 |

CHARLES E. DAYTON, IMPLEADED WITH JOHN B. HOOKER AND FOSTER REYNOLDS v. JAMES T. MONROE.

*Fraudulent purchase—Surrender of purchaser's note—Proof of complicity— Estoppel from repudiating title— Waiver by delay.*

Under a declaration charging in one count that defendant has defrauded plaintiff of a horse, and in another, that he has wrongfully converted it, testimony of fraudulent purchase and conversion is available for both counts.

47 MICH.—13

One is not estopped from repudiating the title of a defendant whom he charges with having obtained the property from him by false pretenses.

Where a purchaser commits a fraud in giving his note in payment, the defrauded party is not bound to surrender the note before suing him for the fraud if the note is the defendant's personal, unsecured obligation, and is needed as evidence of the fraud.

Delay in suing for fraud does not of itself necessarily bar the suit, if it does not come within the statute of limitations.

Waiver, by delay, of the right to sue is a question of fact and not of law in all controversies that are not within the statute of limitations.

Complicity in fraud with joint defendants against whom there is direct evidence, is provable by showing that all the defendants have been engaged together in similar transactions and that the act was done under a general agency for the particular defendant, who had previously proposed to participate with the others in a series of frauds of the same character.

A particular fraud cannot be proved by presumption alone; but where the fraudulent act is shown to have been committed by one or more persons, presumption is admissible to show the complicity of others who have authorized or procured its commission.

Error to Ingham.    Submitted Oct. 19.    Decided Oct. 26.

Case.    Defendant Dayton brings error.    Affirmed.

*M. V. & R. A. Montgomery* for plaintiffs in error.

*J. C. Shields* and *H. P. Henderson* for defendant in error, in support of the evidence of complicity, cited· *Beebe v. Knapp* 28 Mich. 59 ; *Cook v. Perry* 43 Mich. 623 ; Abbott's Trial Ev. 618; *Hamilton v. Smith* 39 Mich. 230.

Campbell, J.    Monroe sued Dayton, with John B. Hooker and Foster Reynolds, charging in the first count that defendants defrauded him of a horse, and in the second that they wrongfully converted the horse.    The suit was subsequently discontinued against all but Dayton.

The fraud committed on plaintiff was through the immediate instrumentality of Hooker and Reynolds.    The horse went into Dayton's hands, and the recovery was sought and obtained on the ground that all of them were partners in

the fraud and mutually concerned in originating and furthering it.

The errors relied on upon the argument all go to the introduction of testimony to prove a general conspiracy, and to delay in suing.

The delay was relied on, both as a waiver by lapse of time, and a waiver by not giving up the note of Hooker and Reynolds before suit or after. We do not understand that there is any rule requiring a defrauded party to give up the personal unsecured obligation of those who defraud him, as a condition of suit for the fraud. It is one of the documents which may be necessary, as it was here, to prove the false representations, which were indorsed on the note itself. By surrendering this plaintiff would have lost the most important item of proof which he possessed. And delay alone, while it may have some bearing on the fraud as affecting the plaintiff's conduct, cannot be in a court of law a bar to suit, unless coming within the statute of limitations applicable to such cases. In all controversies not within the statute, waiver, if relied on, is a question of fact and not of law.

Upon the question of proof to connect Dayton with the fraud of the other parties, the evidence consisted of proof that Dayton got the horse, and testimony of an original transaction in which Dayton proposed to participate with the others in a series of frauds of the same character as the one in suit. This was in brief, that in April, 1875, Dayton suggested the purchase of property by giving notes and making statements of property in connection with them, and agreeing to take the articles so obtained if he could get them on reasonable terms. The further testimony was of a series of transactions of the same character in which he received property, which was thus obtained.

It is now objected that the fraud in question cannot be proved by other independent frauds. We do not think the testimony was improper. The fraud itself was proved by direct evidence, as against Hooker and Reynolds. It was certainly competent to show that they had a confederate.

This might be proved, no doubt, by evidence of a distinct agreement to do this act. But it might also be proved by showing that the act was done under a general as well as under a special criminal agency. The reception of the property would not necessarily prove complicity in the fraud, because an honest man may buy of a rogue. But proof that the parties were engaged together in that kind of business would have a very strong tendency to show that this was a common venture. If a conspiracy could only be proved by showing a verbal or formal agreement, very few such crimes could be punished. The only feasible method of proof is to show that the parties act in such concert as to lead naturally to the conclusion of a common arrangement. This can usually be done only by evidence of various similar transactions in which they participate. The proof of conspiracy in this way is too well recognized to be doubted, and common experience has shown its necessity. It is not allowed to prove the particular fraud by presumption alone; but when the fraudulent act is shown to have been committed by one or more persons, it is received to show the complicity of others who have authorized or procured it to be committed. And when the jury found here that Dayton's dealings in regard to this horse were similar to those which he had suggested generally, and had participated in on several occasions, they were warranted in drawing the inference they did.

The testimony of fraudulent purchase and conversion of the horse, was available for both counts. It cannot be seriously claimed that a person cannot, as against those who get his property by false pretenses, repudiate their title.

We do not discover any questions on the record which do not come fairly within the range of what we have said above.

The judgment must be affirmed with costs.

The other Justices concurred.