### CONROY M. STOCKHAM v. AMHERST B. CHENEY.

*Directing verdict for defendant—Error, where plaintiff's case, as made by the evidence of his witnesses, entitles him to legal redress in the action brought—Evidence should be submitted to the jury—Whose duty it is to pass upon same—In action for alleged fraud on sale of land by defendant—To which he claimed a good title, which he agreed to convey to plaintiff—But gave him a quitclaim deed—Having no title to ten acres of the land—And balance being subject to redemption on statutory foreclosure—And burdened with a tax lien, unprovided for—Rescission of contract or tender of reconveyance not necessary before bringing suit—Nor is recovery barred by plaintiff's having moved onto the land—From which he has not been evicted—Plaintiff, on his theory, entitled to a good title—And, on failing to get it, can recover difference in value of such a title and the one received.*

1. Upon a review of the testimony in this case, *held*, that the court erred in directing a verdict for the defendant.

2. Where a suit is brought for the alleged fraud of the defendant in obtaining plaintiff's money on the sale of land to which he claimed title, which he agreed to convey, when in fact he had no title at all to ten acres of the land, and the balance was burdened with an equity of redemption and tax lien, which were not provided against by the defendant, who conveyed the land by a quitclaim deed to plaintiff,—

    *Held*, that it was not necessary for plaintiff to rescind the bargain or tender a deed of the premises back to the defendant before bringing suit, nor is a recovery barred by plaintiff's moving onto the land soon after his purchase, from which he has not been evicted or disturbed in his possession.

    *Held*, further, that plaintiff · was entitled, on his theory, to a *good* title, and, failing to get it, could recover the difference between the value of the premises with *such* a title and their worth with the title he received.

Error to Kent. (Judkins, J., presiding.) Argued. May 12, 1886. Decided June 17, 1886.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*J. C. Fitz Gerald* (*A. C. Adsit*, of counsel), for appellant.

*Norris & Uhl*, for defendant.

[Briefs of counsel confined to a discussion of the testimony.—REPORTER.]

MORSE, J. The plaintiff claimed in his declaration in this case that the defendant falsely and fraudulently represented to him, in February, 1884, that he was the owner in fee-simple of seventy acres of land, known as the Underhill farm, in the township of Sparta, Kent county, and that he had a good title thereto free and clear from all incumbrances, except a mortgage of about $1,500, known as the Scott mortgage; that his title was "all straight" and "all right," and that he would give defendant a good title; that the plaintiff, being ignorant of the title, and unable to ascertain personally from an abstract of title whether it was good or not, believing the statements of the defendant as to such title, and relying upon them, purchased said farm of defendant subject to the Scott mortgage, and paid him $1,000.

Plaintiff further averred that the defendant had no title in fee-simple, or any title at all, to said premises, which were incumbered by another mortgage, given by one Thomas Feeley to Underhill, for something over $500, all of which the defendant well knew at the time of such representations and statements; and that by the fraud of the defendant as above stated he had wholly lost the purchase price so paid upon the premises, and sustained other damages, not specifying them, to the amount in all of $5,000.

The plea was the general issue.

Upon a trial in the Kent circuit court in October, 1885, the presiding judge, Hon. J. Byron Judkins, instructed the jury to find a verdict for the defendant, which they did.

The correctness of this instruction upon the whole evidence is submitted to this Court.

The plaintiff introduced evidence tending to show that he

came from the State of New York in the spring of 1884, and was looking for a farm. He examined the farm in question, and being informed by acquaintances that the defendant owned it, and was a man whose word could be relied upon, he went to Cheney and asked him if he owned it and wanted to sell it, to both of which inquiries he received an affirmative answer. The price was to be $2,200, out of which the Scott mortgage, held by Henry Fralick, was to be paid. That Cheney told him he would give him a good title, and he could have possession as soon as he could get his family from New York.

That the deed was made out and the $1,000 paid to Cheney, who applied enough upon the mortgage held by Fralick so that it was reduced to $1,200, which then represented the balance to be paid by plaintiff. That he did not look at the deed particularly, and that it was read to him by Cheney. That he did not know the difference between a warranty and a quitclaim deed. That he relied upon the statements of Cheney that he was getting a good title, and should not have purchased it if he had known the actual condition the title was in.

The defendant produced testimony tending to show no fraud upon his part, and that the plaintiff well knew and understood the precise nature of the title, and Cheney's connection with it.

The following facts may be taken as established on the trial without any particular dispute :

In January, 1879, Almeron M. Underhill was the owner of the premises. In October, 1881, he sold them to one Thomas Feeley for $2,700, subject to the Scott mortgage. Feeley gave back to Underhill a mortgage for $700, due May 1, 1882. This mortgage not being paid, Feeley having conveyed the premises to one Kieldson, who manifested no desire to lift the incumbrances, Underhill assigned it to the defendant, who foreclosed it under the statute, and received a sheriff's deed on the foreclosure sale, bearing date January 7, 1884, and recorded the same day.

That the only title Cheney had to the premises at the

time of plaintiff's purchase was under this sheriff's deed, which did not describe ten acres of the premises sold to plaintiff, but described another parcel, not covered by the mortgage, in its stead, there being three descriptions of land mentioned in the mortgage, and in the deed from defendant to plaintiff.

Cheney knew the condition of his title except as to the mistake of the ten acres in the sheriff's deed, which he claims he did not know.

There was an equity of redemption of the whole premises, which would not be barred within a year from January 7, 1884, or longer if any of Kieldson's creditors should desire to redeem.

The plaintiff claims that when he came back from New York, where he went after the purchase to get his family, he spoke to the defendant, some time in April, 1884, about the subject of Fralick's mortgage, and, having a desire to pay it, asked Cheney if he thought Mr. Fralick would take good money; that plaintiff thought he might better pay up the mortgage than to pay interest. Then for the first time Cheney told him of this outstanding equity of redemption, and said: " You hadn't better pay up the mortgage. There is a chance of redemption while the title is not good." Thereupon plaintiff consulted an attorney and learned the true state of his title.

It seems to me that the plaintiff was entitled to go to the jury. However convincing the defendant's case may appear to us as establishing his innocence of any fraud, there is a substantial conflict of fact between the plaintiff's and the defendant's version of the transaction, and each is corroborated in a more or less degree by other parties. If the plaintiff is to be believed,—and this was for the jury to have determined, and not the court,—the defendant represented that he had a good title and would give the plaintiff one, when he knew his title was not yet perfected, but subject to be defeated by redemption, and gave him only a quitclaim of the premises.

It is true that the damages were not very properly brought before the court and jury, and there was no safe method of measurement from the evidence; but the plaintiff was cer-

tainly entitled upon his case to nominal damages, and I think more. If the plaintiff's statements were true, the jury would have a right to infer that the defendant also knew of the tax lien upon the land, which amounted to some $19.

At any rate, if they believed the defendant purposely refrained from acquainting the plaintiff with the nature of his title, and agreed to give the plaintiff a good title and did not do so, there was the value of the ten acres, less its proportionate share of the mortgage, which he had lost, and for which the defendant ought to recompense him.

It is intimated in the evidence, but it does not clearly appear, that plaintiff purchased the equity of redemption of Kieldson, and thereby acquired as good a title as Cheney could have given him had there been no mistake as to this ten acres in the foreclosure proceedings. If so, then the plaintiff, upon the theory of his evidence, was entitled to recover what the equity of redemption cost him.

It is urged that the plaintiff did not offer to rescind the bargain or tender a deed of the premises back to defendant before suit. If he got no title to this ten acres by such deed it was not necessary to go through the formality of deeding it back to Cheney, who had no title at any time to it.

Neither does the fact that plaintiff moved upon the premises soon after the purchase, and has not thus far been evicted or disturbed in his possession, have any bearing upon his right to recover.

This action is not brought upon covenants in his deed, but for the fraud of the defendant in obtaining the money of the plaintiff by representing that he had title and would convey it, when in fact he had no title at all to ten acres, and therefore conveyed none, and the title to the balance was burdened with an equity of redemption, and also a tax lien, which defendant failed to mention or provide against. Whatever damage and expense accrued to the plaintiff thereby he ought, if his testimony be true, to have recovered. He was entitled to a good title, and, failing to get it, he could recover the difference between the value of the premises with a perfect title and their worth as the title actually was.

Whatever may be our opinion upon the whole case as pre-

sented in the record, we have no right under the state of the plaintiff's proofs to usurp the legitimate powers of the jury, whose province and duty it is to decide the truth as to disputed propositions of fact. It is sufficient for us to determine that if the plaintiff's case, as made upon the facts presented by his witnesses, was the true statement of the transaction leading to the purchase of the premises, then he had a legal right to redress in this action. We are not bound, nor is it our privilege, to go further and examine the defendant's case, and, finding a conflict between the stories, to ascertain where the truth lies. That duty belongs to the jury.

A new trial is therefore granted, and the judgment of the court below reversed, with costs of this Court.

The other Justices concurred.

---

62   15 | 83   633

62   15 | 94   123

62   15 | 98   207,

62   15 | 106   503

62   15 | f121   172

62   15 | e139 ¹572 | 139 ¹573

62   15 | f144 ²238

62   15 | f148 ³434