JOHN D. MAXTED v. SMITH W. FOWLER.

*Sale—Warranty—Representations as to value—Caveat emptor—Damages—Evidence—Costs.*

1. Where a vendor knows that the vendee is ignorant of the value of the property, and is relying upon his representation as to such value, and such representation does not take the form of a mere expression of opinion, and is in the nature of a statement of fact, the rule of *caveat emptor* does not necessarily apply; citing *Picard v. McCormick*, 11 Mich. 68; *Manning v. Albee*, 11 Allen, 520; *Lawton v. Kittredge*, 30 N. H. 500; *Bradley v. Poole*, 98 Mass. 169; *Miller v. Barber*, 66 N. Y. 558; *Gerhard v. Bates*, 20 Eng. Law. & Eq. 129.

2. A representation by the owner of mining stock to a proposed purchaser, who is unacquainted with mining property, that the stock is readily selling at one dollar per share, is a representation of a fact upon which the purchaser has a right to rely.

3. In a suit by a vendee for breach of warranty as to the value of mining stock purchased by him, his right of recovery will not be affected by proof of his retention of the stock and employment by the mining company to assist in developing the mine.

4. Testimony tending to show that plaintiff's work in constructing a mill was not well done cannot be rebutted by proof of his ability as a carpenter and joiner, coupled with the opinion of the witness that plaintiff is a first-class man in every respect.

5. The proper measure of damages in a suit for a breach of warranty on the sale of mining 'stock, which is not shown to be absolutely worthless, is the difference between the market value of the stock as represented and what it was in fact worth at the time of its transfer to the plaintiff.

6. The cost for printing the record in this case is limited to 200 pages, which it is held would have fairly presented all the questions the Court have been called upon to consider.

Error to Manistee. (Judkins, J.) Argued October 26, 1892. Decided December 22, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Cahill & Ostrander*, for appellant, contended:

1. *Assumpsit* will not lie for representations of value upon the theory that they amount to a warranty; citing *Picard v. McCormick*, 11 Mich. 68.

2. Representations as to quality, quantity, extent, timber, location, distance from market, etc., relate to known or ascertainable facts, which might render the property different in substance from what the purchaser was justified in believing it to be, and may be relied upon; citing *Starkweather v. Benjamin*, 32 Mich. 305; *Wright v. Wright*, 37 Id. 55; *Match v. Hunt*, 38 Id. 1; *Baughman v. Gould*, 45 Id. 481; *Jackson v. Armstrong*, 50 Id. 65; *Holcomb v. Noble*, 69 Id. 396; but no case will be found where a recovery has been permitted for statements as to the value of property, present or prospective, however erroneous, unless fraud and deceit formed the basis of the action or defense; except in such cases, the rule *caveat emptor* applies; citing *Swimm v. Bush*, 23 Mich. 99; *Kost v. Bender*, 25 Id. 515; *Beebe v. Knapp*, 28 Id. 53.

*Niskern & Withey*, for plaintiff, contended:

1. If defendant made untrue representations of value or richness, or of any other material character, and plaintiff relied upon them, he is liable; citing *Holcomb v. Noble*, 69 Mich. 396; *Van Hoesen v. Cameron*, 54 Id. 609; *Jackson v. Armstrong*, 50 Id. 65; *Baughman v. Gould*, 45 Id. 481; *Match v. Hunt*, 38 Id. 1; *Wright v. Wright*, 37 Id. 55; *Starkweather v. Benjamin*, 32 Id. 305; *Galloway v. Holmes*, 1 Doug. 339; *Pierce v. Drake*, 15 Johns. 475.

2. An action on the case may be maintained for false represen-
   tations on the sale of property, whereby the plaintiff was
   deceived and defrauded, even though the vendor was not aware
   of their falsity when he made them; and such representations
   may be treated as warranties, and *assumpsit* brought, at the
   option of the vendee; citing *Stone v. Covell*, 29 Mich. 359;
   *Hawkins v. Pemberton*, 51 N. Y. 198; *Wheeler v. Reed*, 36 Ill.
   81; *Henshaw v. Robins*, 9 Metc. 83; *Burge v. Stroberg*, 42 Ga.
   88; and as the declaration in either case must set out the facts,
   there must necessarily be considerable similarity; citing *Carter
   v. Glass*, 44 Mich. 154.

MONTGOMERY, J.    The plaintiff brought an action to
recover damages for a breach of warranty alleged to have
been made by defendant on an exchange of property
owned by plaintiff for stock in a mining corporation trans-
ferred to him by the defendant.    On a trial before a jury
in the Manistee circuit a judgment was rendered for
$1,657.50.    From this judgment defendant appeals.

The plaintiff's testimony tended to show that he
exchanged property in Manistee, valued at $1,800, for min-
ing stock, which, at 75 cents per share, amounted to
$1,300, and $500 in cash; that the defendant exhibited
specimens which he claimed came from the mine of the
company, and assured plaintiff that he (defendant) was
going to make a rich man of him, and that the stock was
then selling for $1 per share, but that, as the company
desired to engage plaintiff's services, and to have him
interested, he would let him have the stock at 75 cents; that
he (defendant) would make the stock worth $2 a share
inside of six months.    The mine owned by the corpora-
tion was not developed, consisted of little more than an
excavation, and the plaintiff testified that he was wholly
unacquainted with mining property, and of this the defend-
ant was advised.    The circuit judge charged the jury:

"If the jury find that the defendant represented to the
plaintiff that the stock was worth a dollar a share, and
that he would make it worth two dollars a share, and that

the plaintiff relied upon and acted upon this representation, and turned out his property for the $500 and the stock, and if the jury also find that the stock was utterly worthless, the plaintiff will be entitled to recover."

Defendant's first contention is that these representations of value are not such as a purchaser has a right to rely upon. He invokes the rule that any purchaser must expect that the vendor will seek to enhance his wares, and must disregard the vendor's statements as to value. This is undoubtedly the general rule, but it is subject to exceptions. Where the defendant knows that the plaintiff is wholly ignorant of the value of the property, and knows that he is relying upon the defendant's representation, and such representation does not take the form of a mere expression of opinion, and is in the nature of a statement of fact, the rule of *caveat emptor* does not necessarily apply. *Picard v. McCormick*, 11 Mich. 68; *Manning v. Albee*, 11 Allen, 520; *Lawton v. Kittredge*, 30 N. H. 500; *Bradley v. Poole*, 98 Mass. 169; *Miller v. Barber*, 66 N. Y. 558; *Gerhard v. Bates*, 20 Eng. Law & Eq. 129. We think, under the circumstances of this case, that the plaintiff had the right to rely upon the defendant's statement that the stock was readily selling at a dollar a share. This was a statement of fact which the testimony shows to be untrue, and it cannot be doubted that such a statement would have a material influence upon the purchaser.

In *Medbury v. Watson*, 6 Metc. 259, an action was maintained for false and fraudulent representations as to the price paid by a third person for the property in question.

In *Manning v. Albee, supra,* it was said:

"In the case now before us the plaintiff offered to show that he was induced to part with his goods by the false and fraudulent representations of French and the defendant, not only as to the value of the bonds offered by French to secure the note given by him for the goods,

but also as to the sale of such bonds in the market at a certain price, appearing by a published list of sales of stocks and securities, which they exhibited to him, to have actually taken place. This last representation was one which the plaintiff is not shown to have had equal means of knowing the truth or untruth of, and on which he might, without imputation of negligence, rely, and, upon discovering it to be false and fraudulent, maintain an action."

In *Miller v. Barber*, a representation that a patent owned by the company was of great value, and that certain other persons were owners of stock, was held to have been such a representation as the purchaser had a right to rely upon.

In *Lawton v. Kittredge*, a representation that certain stock "is good property or investment, and is about to make a dividend," is held to be a false representation when untrue, and where the person taking the stock objected to receiving it on account of his doubt or ignorance as to its value.

In *Bradley v. Poole*, representations that a corporate property is valuable, and one of the best properties in Colorado, when in fact the company is a bubble company, are held to raise a question of fraud for the jury to pass upon.

We think that a representation as to the market value of stock of this character is a representation of a fact which bears upon the question of the actual value, and there was no error in so instructing the jury.

But it is said that, inasmuch as the plaintiff retained this stock, and went into the employ of the company in the effort to make the stock valuable and his adventure profitable by developing the mining property, he cannot, the adventure failing, recover the value of his property upon the ground that the representations upon which he purchased were untrue. Undoubtedly this contention is sound if it be intended to be limited to asserting the doctrine that, after thus participating in the management

of the corporation, and holding stock some months, the plaintiff would not be permitted to rescind his contract with the defendant; but that is not the nature of the present action; it is a suit upon the warranty, and, if he has shown the warranty, he has a choice of remedies, either to rescind the contract or to sue and recover damages for the breach.

The defendant offered testimony which tended to show that the plaintiff, in constructing a mill which was on the mining property, had not done the work well. The plaintiff, in rebuttal, was permitted to call a witness, who testified that he was acquainted with the plaintiff, and had occasion to know of his capacity and ability as a carpenter and joiner, and, against the objection of defendant, was allowed to testify that he considered him a first-class man in every respect. This was error. Testimony that the mill in question was not well constructed did not necessarily involve the question of plaintiff's capacity or ability as a carpenter or millwright.

One G. Peden testified to having seen the plaintiff intoxicated while in Arkansas. The plaintiff, in rebuttal, was permitted to introduce a certificate or recommendation purporting to be signed by Peden, which was introduced and read to the jury, as follows:

" *To whom it may concern:*

"CRYSTAL SPRINGS, ARKANSAS, February 8, 1888.

"We, the citizens of Crystal Springs, Aakansas, having seen a letter written in Manistee, Michigan, which states that one S. W. Fowler, of Manistee, Michigan, has been circulating false reports about Mr. J. D. Maxted, formerly of Manistee, Michigan, and now of Crystal Springs, Arkansas, we will say that, if Mr. Maxted has ever been discharged by the Accident Ore Mining Company, we can see no reason why, unless it was a plan set by one S. W. Fowler to beat him out of his wages, for Mr. Maxted is not a drinking man in any sense of the word, and to charge him thus is unjust and untrue. Mr. Maxted has shown himself to be a perfect gentleman ever since he has

been here, and has also proved himself capable of doing any business intrusted to him; and we, as citizens of Crystal Springs, Arkansas, in justice to Mr. Maxted, will and do say that the charge against him by one S. W. Fowler is unjust."

Signed, among others, by G. Peden.

This paper was not shown the witness Peden on cross-examination, nor was he given any opportunity to explain it when it was offered for the purpose of contradicting his statement that he had seen Maxted intoxicated. In addition to the general objection that it was immaterial and incompetent, it was objected that, even if admissible, whatever related to the drinking was all that should be read to the jury. This objection was overruled, and the letter read in evidence. On a subsequent motion the letter was stricken out because the letter relating to the conduct of Mr. Fowler was not produced. It would have been difficult to frame an instrument which was better calculated to prejudice the defendant's case than was this. It was clearly not admissible, and we cannot say that it did not have its effect in prejudicing the jury against the defendant. It was a direct attack upon his character which was libelous if untrue, introduced an issue wholly foreign to the case, and which the defendant could not be expected to meet, and the fact that it was afterwards stricken out is not conclusive that the impression did not remain with the jury. It is incredible that the purpose of plaintiff's counsel could have been other than to prejudice the jury.

One other assignment of error only will be referred to. On the subject of damages the circuit judge charged the jury:

"If it [the stock] was entirely worthless, as claimed here, then, if the plaintiff recovers at all, he will recover the whole amount of his claim at your hands. There can be no recoupment in this case of the defendant against the plaintiff for any claim raised upon that head. The claim

cannot be sustained in this suit, for in fact there is no basis for it under the evidence."

And again:

"In case you find for the plaintiff, it will be for the full amount, with interest at six per cent. In case you find for the defendant, it will be, 'No cause of action.'"

The proper rule for damages would be the difference between the market value of the stock as it was represented to be and what it was worth in fact, and this would have reference to the time when the stock was transferred to the plaintiff. We think the testimony in the case failed to show conclusively that the stock was absolutely of no value at the time this transfer was made, and therefore the question of its value should have been submitted to the jury.

For the errors pointed out the judgment will be reversed, and a new trial ordered.

The record contains 342 pages, includes all the orders made in the case and all the testimony, which was unnecessary; and not only this, but the testimony is given precisely as it appears in the stenographer's minutes, not even omitting the certificate of the stenographer. This practice has been often condemned. We think a record of 200 pages at the most would have fairly presented all the questions which we have been called upon to consider, and the costs for printing will be limited to that number of pages.

McGRATH, C. J., LONG and DURAND, JJ., concurred. GRANT, J., concurred in the result.