STONEY CREEK WOOLEN CO. *v.* SMALLEY.

1. VENDOR AND PURCHASER—JOINT TORT FEASORS—FALSE RECEIPT.

One who deliberately gives to another a receipt falsely stating that he has received a specified amount for certain property, knowing that the latter intends to use the same for the purpose of obtaining a higher price for such property on a resale thereof, is liable as a joint wrong-doer for any damages resulting from such use, although he is in no way benefited by the fraud.

2. SAME—CAVEAT EMPTOR—APPLICATION OF RULE.

M., being possessed of considerable means, advertised for a business opening, and was answered by D., who solicited him to purchase certain property. D. represented that he had acquired the property from S. for a consideration of $5,000, and, in support of the representation, exhibited a receipt signed by S. M. was an entire stranger to the parties, and was ignorant of the value of the premises; but, having learned

by inquiry that the reputation of D. was good, he made the purchase. It thereafter developed that the receipt falsely stated the consideration of the transfer to D.; that D. had in fact paid $2,500 only. *Held*, that the rule of *caveat emptor* did not apply, and that M. was entitled to recover for the deceit.

3. FRAUD—SETTLEMENT OF TORT—WHAT CONSTITUTES.

The payment to the president of a corporation of an amount due him for services rendered to the corporation, and the assignment of his stock to a person in trust for the corporation, and his withdrawal from all connection therewith, upon discovery of the fraud practiced by such president in selling property to the corporation, do not amount to a settlement of the tort, where none of the parties regard it as such.

Appeal from Oakland; Smith, J. Submitted October 23, 1896. Decided December 24, 1896.

Bill by the Stoney Creek Woolen Company and Foster Macgurn against Robert Smalley and Edwin E. Davis to set aside a deed and a mortgage on the ground of fraud. From a decree for complainants, defendant Smalley appeals. Affirmed.

The object of the bill filed in this cause is to set aside a deed of certain real estate, constituting a mill property, executed by the defendant Smalley to the complainant corporation, to set aside a mortgage executed to Smalley by the corporation, and to recover moneys invested by the complainants in permanent improvements, on account of fraudulent representations alleged to have been made by the defendants to the complainant Macgurn. The case was heard upon the pleadings and proofs taken in open court, and decree rendered setting aside the deed and mortgage, and that complainants recover $2,821.89, the amount invested in permanent improvements. The facts are not in dispute. The property was owned by defendant Smalley, and was out of repair. Macgurn was possessed of some means, and advertised for a business opening. He received an answer from the defendant

Davis. Davis represented to him that he had acquired this property, had paid $2,500 in cash, and had agreed to pay $2,500 more. He exhibited a receipt to Mr. Macgurn, signed by Smalley, acknowledging the receipt of $2,500 ·upon the purchase price, which receipt was signed by one Redfield as a witness. Mr. Macgurn was a stranger to Davis and to the property, and had had no experience in the business, or knowledge of the value of property of that character. He inquired about the reputation of Mr. Davis, and found it was good. Smalley offered Davis the property for $2,500. Davis told Smalley that he wanted the consideration expressed as $5,000, and wanted a receipt from him of a cash payment of $2,500, which Mr. Smalley gave. Davis paid Smalley nothing. Macgurn went to Stoney Creek, and looked over the property. Relying upon the representations made by Davis, and upon the receipt given by Smalley, Macgurn agreed to the purchase of the property at $5,000; that a corporation should be formed; that Davis was to take $2,500 of the stock, and Macgurn was to contribute $7,500. Improvements were to be made. Smalley was to execute a deed to the corporation, and receive back a mortgage of $2,500, the balance of the purchase price. The corporation was formed, and the papers executed. Davis contributed nothing, and the entire expenditures were made by Macgurn. The business was a failure. Upon ascertaining the facts in the case, complainants filed this bill.

*James C. Smith, Jr.*, and *Otto Kirchner*, for complainants.

*Aug. C. Baldwin*, for appellant.

GRANT, J. (*after stating the facts*). Three defenses are interposed.

1. It is urged that Davis was not an agent of Smalley; that the latter did not authorize Davis to make any representations; that he was to have no interest in the corporation; had no partnership relations with Davis; that

he was not concerned in and received no part of the purchase money for which the property was to be sold, above his original price of $2,500. This defense cannot obtain. Smalley gave Davis a false paper. He knew it was false, and that it could not be used for any legitimate · purpose. He knew that a fictitious consideration was stated in the deed. He testified:

"*Q*. Did you give Davis a receipt?
"*A*. He has got a receipt for $2,500. I must have given it.
"*Q*. Was that receipt a lie?
"*A*. It appears it is.
"*Q*. Did you think it was right to give it to him when you gave it to him?
"*A*. I did not think it right, but I did it."

Mr. Macgurn testified that on one occasion Smalley told him that Davis wanted the receipt to show to parties that he was trying to get interested in forming a company. Mr. Redfield testified that Smalley told him that the consideration was to be stated at $5,000, but the mortgage was to be given for $2,500; and Mr. Redfield asked him if Davis had paid a part of the consideration, to which Smalley replied, "That is a matter between us." Where one deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, he is a joint wrong-doer, and must be held responsible for the consequences which follow. Smalley cannot defend upon the ground that he received no benefit from the fraud. *Weber* v. *Weber*, 47 Mich. 569.

2. It is also urged that an action for deceit in the sale of real estate does not lie for the fraudulent misrepresentation as to the price paid. In support of this, the learned counsel cites *Holbrook*. v. *Connor*, 60 Me. 578 (11 Am. Rep. 212); *Medbury* v. *Watson*, 6 Metc. (Mass.) 259 (39 Am. Dec. 726); *Mooney* v. *Miller*, 102 Mass. 220. In *Medbury* v. *Watson* the question now presented was not in issue, and the language of the court

upon which the counsel relies was not necessary to a decision of the case. In *Mooney* v. *Miller* the representations relied upon referred to the quantity of wood and hay that could be cut from the land, the possibility of acquiring adjoining lands with buildings thereon belonging to third persons, and to the number of acres in the lot, the boundaries of which were truly pointed out. It was properly held that the action would not lie. The case of *Holbrook* v. *Connor* appears to sustain the defendant's contention. The court was divided in opinion. The authorities are quite fully referred to and discussed in the majority and minority opinions. We cannot accede to the doctrine of that case as applied to this. Macgurn was a stranger to both the business and the locality, and did not know the value of the property. Smalley was a very old man, and stood high in the community. Davis' reputation was good. Both had asserted in writing that the price at which Smalley agreed to sell to Davis was $5,000, of which $2,500 had been paid. We think Macgurn was entitled to rely upon these representations, and to recover upon proof of their falsity. The rule of *caveat emptor* does not apply to such a case. *Jandorf* v. *Patterson*, 90 Mich. 40.

3. It is next urged that Macgurn and Davis compromised the fraud, and that this estops complainants. The law is well settled that where one, with full knowledge of the situation, settles with one tort feasor, he discharges not only him, but also the others. This is conceded. 1 Am. & Eng. Enc. Law (2d Ed.), 428. But the facts in this case do not bring the complainants within this rule. Mr. Davis was made president of the company, and had much to do with its management. For reasons unnecessary to mention, Mr. Macgurn became suspicious of Mr. Davis, and about that time he was informed that Mr. Davis had not paid the $2,500. He thereupon went to see Mr. Smalley, who admitted that he had received no money. He also said that he had received a letter from Mr. Davis, which he refused to let

Mr. Macgurn see, and that the only paper he considered he was bound under was the mortgage. He then returned to Mr. Davis, who denied Mr. Smalley's statements, and asserted he had paid Mr. Smalley. Mr. Macgurn, being dissatisfied with his management, insisted that Davis should withdraw from the concern. Mr. Macgurn paid him $280, the balance due him for services rendered to the company, and he assigned his stock to a person in trust for the corporation, and withdrew from all connection with it. Neither Macgurn nor Davis understood that they were settling the fraud, or that their negotiations had any reference whatever to the transaction connected with the purchase of the property. The rights of neither Davis nor Smalley were affected by that arrangement. Davis had paid nothing for his stock. Mr. Macgurn desired to rid the corporation of any control by Davis, whom he believed to be dishonest, and who was financially irresponsible. This did not amount to an accord and satisfaction, with full knowledge of the facts. *Mudsill Mining Co.* v. *Watrous*, 9 C. C. A. 415, 61 Fed. 163.

Decree affirmed, with costs.

The other Justices concurred.