WEGNER *v.* HERKIMER.

1. FRAUD—RESCISSION—TENDER—DAMAGES.

In an action for fraudulent representations that defendant was the owner of the entire interest in a land contract in which defendant had only a half interest, and which he exchanged for a stock of goods belonging to plaintiffs, it was not necessary for plaintiffs to rescind the transaction or tender back an assignment of the contract; their measure of damages would equal the difference between the value of the contract interest as represented and its actual value.

2. SAME—LACHES—LIMITATION OF ACTIONS.

Laches would not bar the action, which was brought within nine months after the fraud and within about a month after discovering the falsity of defendant's representations; no delay within the limit of the statute of limitations would be a defense to the action.

3. SAME—PLEADING—VARIANCE.

Although some of the representations alleged in plaintiffs' declaration would not warrant a recovery, it is not necessary to prove all the allegations, but if proof of any material fraudulent representation is presented, plaintiffs are entitled to recover.

4. SAME.

Representations that defendant had paid $800 for the contract, that he owned the entire interest therein, and that everything had been paid on the contract up to date, were material and might properly be found by the jury to have influenced plaintiffs.

5. SAME—PRINCIPAL AND AGENT.

Evidence of conversations between plaintiffs and a person held out as his agent by defendant was properly received.

6. SAME—EVIDENCE—MARKET PRICE.

Plaintiffs' testimony as to the market value of a stock of furniture which they exchanged for the land contract was not improperly received to rebut defendant's claim that they had misrepresented the value of the stock.

7. SAME—INSTRUCTIONS TO JURY.

> A charge to the jury which, considered as an entirety, was full and fair and sufficiently submitted to the jury the issues in the case was not objectionable.

Error to Cass; Des Voignes, J. Submitted November 8, 1911. (Docket No. 63.) Decided December 8, 1911.

Case by Oswald Wegner and wife against George R. Herkimer for fraud and deceit. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Gore & Harvey*, for appellant.

*Clyde W. Ketcham* (*W. J. Barnard*, of counsel), for appellees.

STONE, J. This is an action on the case to recover damages by reason of the alleged false and fraudulent representations, made by the defendant, by which he obtained possession of a stock of furniture, invoicing $1,030, from the plaintiffs, on or about July 31, 1908. It is alleged and claimed by the plaintiffs that at this time they were the owners of a small stock of furniture at Hammond, Ind., worth the amount above stated; that the plaintiff Oswald Wegner, being desirous of obtaining a farm, was induced to meet the defendant, with a view of exchanging the said stock of furniture for an equity in a farm which the defendant represented that he owned under the assignment of a land contract made to one Elmer Smith by one Arthur E. Rudolphi.

The evidence on the part of the plaintiffs tends to show that they were first visited by one Bixby, who informed them that the defendant had a farm for sale. The plaintiffs gave evidence tending to show that the plaintiff Oswald Wegner accompanied Bixby to Dowagiac, where he had an interview with the defendant; the said plaintiff testified that he told the defendant that he desired to get and go onto a farm, as his health was not good, and he had a

large family of seven children; and that he desired to trade his stock of furniture for such a property.

It is claimed that the defendant stated that he had a good farm, and the said plaintiff, in company with the man Bixby, went upon and examined the property; that when they returned to the defendant the defendant there stated that his price for the farm was $2,662 and some cents, and he said, "You are getting it at a bargain at that."

It is the further claim of the plaintiffs that the defendant represented to the said Oswald Wegner, plaintiff, that there was owing upon the land contract $1,862.42; that that was all that was to be paid after plaintiffs would get it. When asked what the payments were, it is claimed that the defendant replied $200 a year and interest, and that everything was paid up to March, 1909, and that he had receipts to show it, and that he owned all of the land contract, and that he had put $800 into the property or contract.

At this interview, the plaintiff testified that he did not see the land contract to examine it; and, when asked if he would take the place, he replied that he thought he would, but desired first to see his wife. Whereupon the defendant wrote an assignment upon the land contract, which assignment was as follows:

"DOWAGIAC, MICH., July 31, 1908.

"This certifies that I, George R. Herkimer, of Dowagiac, Michigan, do hereby assign, sell, transfer and deliver all of my right, title and interest in the attached contract to Oswald Wagner and Mrs. Hilma Wagner of Hammond, Indiana. Said assignment is made in consideration of one dollar and other valuable considerations.
[ Signed ]     "GEORGE R. HERKIMER.
"MRS. G. R. HERKIMER."

That the defendant delivered this contract to the man Bixby, and said to Bixby:

"You are representing me, and I want you to take this contract and keep it in your possession until the goods are assigned over to me."

Thereupon Bixby accompanied the plaintiff Oswald Wegner back to Hammond, Ind. The plaintiff Oswald Wegner testified that on his way back to Hammond with Bixby the latter said:

"'Well, what do you think about it?' Well, I told him I would like to see this man Rudolphi. He says, 'Didn't you hear what Herkimer had said?' He said that Rudolphi went to New York, and that he wouldn't be back, and that he would see him and tell him about the deal, and have him make out a new contract right direct from him to me. Well, I told him that I would like to see Rudolphi myself, and he says, 'Why, it isn't necessary; and being that is all right, the mayor of Dowagiac, and the doctor with the big practice, he wouldn't do anything.' I says, 'No; I don't suppose he would.' So I took lots of confidence in that."

At Hammond it is testified that Bixby, acting for the defendant and as his agent, on the next morning, made certain representations to the plaintiff Hilma Wegner. She testified that she asked to see the contract; that Bixby said:

"Why, it is all right; it is good. I am an attorney, and know the laws of Michigan. I studied the laws of Michigan for 11 years."

Whereupon it is claimed that he took the contract out, and read the assignment above quoted, but kept the paper in his possession until the bill of sale of the goods had been made and signed.

The plaintiff Oswald Wegner testified that he did not read the contract to see what interest the defendant had therein, but that he relied upon his representation that he owned the whole interest in the contract, and that when the contract was delivered to him in Hammond he did not read it, but gave it to his wife; that he didn't see any indorsement of interest upon the contract. He claimed that there was not a word said by the defendant about his having only a one-half interest in the contract. It is the claim of the plaintiffs that they relied upon these statements and representations made by the defendant, and

that they were false, and that plaintiffs were wholly inexperienced in regard to such matters.

It is the further claim that, when plaintiff Oswald Wegner expressed a desire to see Rudolphi, the owner of the fee in the land in question, and who had made the contract to Elmer Smith, the defendant stated that Rudolphi was in New York, and that when he returned he would tell Rudolphi about the deal, and see him about making a new contract right from Rudolphi to the plaintiffs, which statement as to Rudolphi's absence it is claimed was false.

It ought to be stated that there was indorsed upon the contract, which contract bore date November 14, 1906, and was received in evidence, the following:

"We hereby assign, sell, transfer and set over to George R. Herkimer our undivided one-half interest in and to the within contract.
                    [Signed]        "ELMER SMITH.
                                    "RUTH SMITH."

The plaintiffs claimed and testified that they did not see or read this indorsement, or know of its existence at the time of the trade; and that they relied upon the said representations of the defendant.

These representations, about which the plaintiffs gave testimony, were denied by the defendant, who claims that there was no fraud practiced by him, and that he stated that he had a one-half interest only in the contract, but that he would protect the plaintiffs in the entire interest of Smith, and, although he never tendered to plaintiffs any further assignment as evidence of his good faith in that statement, he testified that, on the 6th day of August, 1908, he obtained from Elmer Smith a quitclaim deed of the premises, and offered in evidence the quitclaim deed.

There is something quite remarkable about this deed. Appellant's counsel in their brief state the following:

"On or about the 6th day of August, 1908, the defendant Herkimer obtained a quitclaim deed from Elmer Smith of his right, title, and interest in and to the premises described in the land contract. (See Exhibit B, R. 100.)

This deed conveyed to the defendant the remaining interest in the land contract."

Turning to the page of the record indicated, we find that the quitclaim deed there set forth—and the only one in the record—does not cover the farm in question, as described in the land contract and plaintiffs' declaration; nor does it describe any part of such land or premises. The defendant testified that he had no recollection of ever having obtained any other quitclaim deed from Elmer Smith. There is something inexplicable to us in this claim of the defendant. His attention seems to have been called to the description in the deed, and his explanation was not at all satisfactory. In April, 1909, the land contract was foreclosed by Rudolphi, and plaintiffs went out of possession.

The plaintiffs upon the trial recovered a verdict and judgment of $400 damages. The defendant has removed the case to this court by writ of error, and there are many assignments of error.

In their brief the attorneys for the appellant state that the questions involved and errors relied upon are:

" (1) That the court was in error in receiving testimony under the declaration, for the reason that it failed to allege a tender back, by the plaintiffs to the defendant, of the interest the plaintiffs received under such contract.

" (2) That the court erred in admitting sundry conversations of the plaintiffs with Harlan A. Bixby, for the purpose of showing that the latter was the agent of the defendant.

" (3) That the court erred in its rulings on questions of evidence as presented by the assignments.

" (4) That the court erred in not directing a verdict for the defendant at the conclusion of the plaintiffs' case, upon the motion of the defendant.

" (5) Error is alleged by reason of the inflammatory language of plaintiffs' attorney in his address to the jury.

" (6) Error is assigned upon the charge in refusing to charge as requested by defendant, and in granting certain of plaintiffs' requests, and that the court erred in its voluntary charge to the jury."

It is the claim of the plaintiffs that the action is based upon the alleged fraud of the defendant, and that the measure of damages is the difference between the thing which the plaintiffs received and the worth of the property and equity therein as represented by the defendant.

1. The defendant's counsel insist in their first point urged that before the cause could be commenced there must have been a rescission of the contract and a tender back, by the plaintiffs to the defendant, of the alleged interest which the defendant had assigned. We have examined the cases cited by appellant upon this point, and we do not think that they are applicable. We think that the question is controlled by the following decisions of this court: *Warren* v. *Cole*, 15 Mich. 265; *Stockham* v. *Cheney*, 62 Mich. 10 (28 N. W. 692). In the last-cited case, suit was brought for the alleged fraud of the defendant in obtaining plaintiff's money on the sale of land to which he claimed title, and which he agreed to convey, when in fact he had no title at all to 10 acres of the land, and the balance was burdened with an equity of redemption and tax lien, which were not provided against by the defendant, who conveyed the land by a quitclaim deed to the plaintiff. It was held that it was not necessary for plaintiff to rescind the bargain or tender a deed of the premises back to the defendant before bringing suit; nor was a recovery barred by plaintiff moving onto the land soon after his purchase, from which he had not been evicted or disturbed in his possession. Held, further, that plaintiff was entitled on his theory to a good title, and, failing to get it, could recover the difference between the value of the premises with such a title and their worth with the title he received. See, also, *Lenox* v. *Fuller*, 39 Mich. 268; *Merrill* v. *Newton*, 109 Mich. 249 (67 N. W. 120); *Morman* v. *Harrington*, 118 Mich. 623 (77 N. W. 242).

We do not think that the plaintiffs were guilty of laches in not bringing this suit before the month of April, 1909. There was testimony that the plaintiffs did not discover

this fraud until the month of March before bringing the suit.   We do not think that any delay within the statute of limitations can be urged in such a case as this.   *Dayton* v. *Monroe*, 47 Mich. 193 ( 10 N. W. 196 ).

2.  It is urged by appellant that the representations alleged to be false in the declaration are not false statements of fact at all; that it was "seller's talk, pure and simple," and numerous cases are cited.   There are some representations set forth in the declaration, the proof of which would not warrant a recovery.   It is not necessary for plaintiffs to prove all of the representations alleged in their declaration in order to recover.   If any material fraudulent representation is charged which resulted in the injury to the plaintiffs complained of, they are entitled, upon the proof of the same, to recover, although the declaration may have charged other acts which are not proven. *Marquet* v. *La Duke*, 96 Mich. 596 ( 55 N. W. 1006); *Smith* v. *Railroad Co.*, 100 Mich. 148 ( 58 N. W. 651, 43 Am. St. Rep. 440); *Warren* v. *Porter*, 144 Mich. 699 ( 108 N. W. 435); *Malkowski* v. *Olfs*, 161 Mich. 303 (126 N. W. 199).   We cannot agree with defendant's counsel that all of the representations testified to in the case were "seller's talk, pure and simple."   Recognizing the rule that a seller has a right to praise his property and to give his opinion concerning it, we think that the rule cannot be extended to embrace false representations of alleged facts in a case which may be and were relied upon by the purchaser, and became an inducing cause of the trade.

The representation that the defendant had put into this contract the sum of $800 may have had a controlling influence with the plaintiffs in this case; while in other instances such a statement might have had no influence upon a buyer at all.   The contract showed upon its face that there was still unpaid thereon the whole face of the contract, save some of the interest.   The fact, if it were a fact, that this defendant, a dealer in real estate, as appears by this record, had paid $800 for an assignment of this contract may have had great influence, as to its value,

with the plaintiffs in this case, who testified that they were entirely ignorant in regard to such matters. Most certainly the representation that he (the defendant) was the owner of the entire interest in the contract was a material representation; and the same may be said of the representation that everything had been paid upon this contract up to March, 1909. *Swimm* v. *Bush*, 23 Mich. 99; *Kost* v. *Bender*, 25 Mich. 515; *Nowlin* v. *Snow*, 40 Mich. 699; *Maxted* v. *Fowler*, 94 Mich. 106 (53 N. W. 921); *Peck* v. *Jenison*, 99 Mich. 326 (58 N. W. 312); *Short* v. *Cure*, 100 Mich. 418 (59 N. W. 173); *Stoney Creek Woolen Co.* v. *Smalley*, 111 Mich. 321 (69 N. W. 722); *McDonald* v. *Smith*, 139 Mich. 211 (102 N. W. 668); *Hokanson* v. *Oatman*, 165 Mich. 512 (131 N. W. 111).

3. Error is alleged in the rulings of the trial court, admitting in evidence the conversations between the plaintiffs and Harlan A. Bixby, in the absence of the defendant. In view of the record, wherein it appears by the testimony of the plaintiff Oswald Wegner that the defendant distinctly stated to Bixby, in the presence of said plaintiff, that he (Bixby) was representing him (the defendant) in the transaction, and that all the material things, all the material conversation testified to by the plaintiffs, occurred subsequently to that statement, and pending the negotiations, we do not think the court erred in receiving this testimony.

4. Error is assigned because the court permitted the witness Oswald Wegner to swear to the fair market value of the goods. In view of the notice of the defendant under the general issue, wherein it was claimed that the plaintiffs had misrepresented the value of the stock of furniture, and in view of this claim of the defendant, we do not think that the court erred in admitting this testimony.

5. We have examined the assignments of error, relating to the requests to charge, and the charge of the court. We think that the entire charge of the court should be examined and considered as a whole. The charge was

very full and fair, and we think properly submitted to the jury the issues in the case, and we find no reversible error relating to the charge.

Lastly, it is urged that plaintiffs' counsel, in his address to the jury, made use of intemperate and improper language. We have examined this record with some care, and, taking into consideration the action of the trial judge and the character of the language used, in view of our numerous recent decisions upon this subject, we cannot say that there was any prejudicial error here. We do not deem it necessary to cite authorities which are so familiar to the profession on this subject.

We find no prejudicial error in the record, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and STEERE, MOORE, and BROOKE, JJ., concurred.