HAENER *v.* McKENZIE.

1. FRAUD—PLEADING—PROOF OF MISREPRESENTATIONS.
   In an action to recover for alleged fraudulent representations in the sale of land, plaintiff is entitled to recover upon proof of any material fraudulent representations charged, although he may have charged other acts which were not proven.

2. SAME—MATERIAL FACTS—SELLER'S TALK.

Representations falsely made by defendant that the land was high and dry and good agricultural land, without mire, swamp, or boggy portions, were material facts and not mere seller's talk, which, relied upon by plaintiff and becoming an inducing cause of the sale, render defendant liable.

3. SAME—QUESTION FOR JURY.

As to whether such representations were made as charged, *held*, to be for the jury.

4. SAME—PRINCIPAL AND AGENT.

An action will lie against defendant for a fraud knowingly committed whether he acted as principal or as agent of another.

5. DAMAGES—FRAUD—RESCISSION OF CONTRACT—INSTRUCTIONS— MEASURE OF DAMAGES.

In an action to recover for alleged fraudulent representations in the sale of land, it was error for the court to charge the jury that the measure of damages was the amount of money paid by the plaintiff, with interest, where there was no evidence that the contract was ever rescinded by the plaintiff and tendered back to defendant; under the pleading and evidence the measure of damages was the difference between the value of the land as represented and what it was actually worth.

Error to Wayne; Hosmer, J. Submitted January 26, 1915. (Docket No. 50.) Decided September 28, 1915.

Case by Arnold Haener against F. W. McKenzie for fraudulent representations in the sale of land. Judgment for plaintiff. Defendant brings error. Reversed.

*Moore & Moore*, for appellant.

*Frederick Miller* and *John W. Bennett*, for appellee.

STONE, J. This case is here upon a writ of error to the Wayne circuit court to review a judgment for the plaintiff for $460 damages, in an action on the case based upon alleged false and fraudulent representations made by the defendant to the plaintiff in the

making of a contract for the purchase by the latter of 40 acres of land from the defendant, as agent of the Magnolia Springs Land Company, an Alabama corporation. The land is located in Baldwin county, Ala. The declaration, in substance, alleges that on, to wit, March 1, 1912, the defendant, representing himself to be the agent of said defendant company, called upon the plaintiff in the city of Detroit and stated and represented to the latter that he (said defendant) had the sale of some very fine farming land in the State of Alabama which he was selling for said company; that the land was very choice stump land, consisting of a very fine black loam with a clay subsoil; that the said land was high and dry, and ideal for farming purposes; that the land was absolutely free and clear of underbrush, and positively worth $50 an acre; and that all of the land was good, substantial, and fine agricultural land, without any mire or boggy portion, and such as to guarantee to the purchaser working the same a big return on the money invested.

It is further averred that the defendant then and there represented that the climatic conditions were perfect, and that severe storms were unknown, and that therefore said land was never inundated by reason thereof; that said land was of such a fertile nature that 200 bushels of sweet potatoes could be raised per acre, which potatoes would sell for at least 40 cents per bushel, and that said land and climate were perfect for the raising of Irish potatoes; that all the land on the 40 acres that he was offering to sell to the plaintiff was good agricultural land, without any mire or boggy portion, and free from vermin and poisonous snakes; that all of said representations were untrue in substance and in fact, and were wilfully, wantonly, wickedly, and maliciously made by said defendant, contriving and fraudulently intending to deceive, defraud, and injure the plaintiff, and by means thereof to induce

the plaintiff to purchase the said property, and advance and deliver to said defendant $400 as part payment thereof.

It is further averred that, relying on all of the aforesaid statements, representations, and pretenses, and believing the same to be true, the plaintiff on, to wit, March 14, 1912, agreed to purchase a certain 40-acre parcel of said land from the Magnolia Springs Land Company for a consideration of $1,600, and paid the defendant $400 in cash, and received a written land contract therefor signed by said company, which contract was offered in evidence by the plaintiff and appears in the record.

The declaration further avers that subsequently, and on the 5th day of September, 1912, the plaintiff moved his family, consisting of his wife and two children, to Alabama for the purpose of taking up his residence on said land; that upon investigation he found that instead of the land being black loam, with a clay subsoil, about 5 acres were covered with marsh and rank underbrush teeming with poisonous snakes and reptiles, and which no possible effort could reclaim for agricultural purposes, and that to penetrate said underbrush was next to impossible, not alone on account of the density of the underbrush and marsh, but also "the jeopardy of life in such a venture into this snake-infested region"; that, in addition to said 5 acres, there were 20 acres of said land that was covered with a great swamp, being a black mire, totally unfit for agriculture "or any other purpose which might be effected by the hand of man for his sustenance"; that the remaining 15 acres were high and dry, but so impregnated with iron ore as to be wholly unfit for the purposes for which the defendant had represented the land to be suitable; that the said climate was so infested with sand flies, bugs, and vermin as to be entirely unfit for habitation; that the cultivation of Irish potatoes was impossible, be-

cause of climatic condition, and that the representation as to the quantity of sweet potatoes that could be raised per acre was absolutely false; that said land, instead of being worth $40 an acre, was, in fact, worth only $10 an acre.

The declaration concludes as follows:

"Plaintiff further avers that after a thorough examination of the land and conditions, and upon becoming aware of the falsity of the aforesaid statements, representations, actions, and conduct of said defendant, the said plaintiff returned to the city of Detroit, and did, on the 9th day of October, A. D. 1912, and on divers subsequent dates, demand of defendant that he return forthwith to the plaintiff the aforesaid sum of money paid and delivered at the time of the execution of the said land contract, but said defendant did wickedly, wantonly, wrongfully, and maliciously neglect and refuse to return the aforesaid sum of money to plaintiff.

"Plaintiff further avers that by means and in consequence of the aforesaid false and fraudulent representations, statements, and pretenses, and believing the same to be true, and not knowing to the contrary, he was induced by means thereof to pay and deliver to said defendant the aforesaid sum of money, and thereby plaintiff lost and was wholly deprived of said sum of money, and plaintiff became, and was, and ever since has been, unable to secure the return, or enforce payment of said sum of money, or any part thereof, greatly to plaintiff's financial loss, injury, and damage."

Upon the trial the testimony took a wide range, and there was evidence tending to support the declaration. There was, however, a sharp conflict in the evidence as to the fertility of the land and its suitableness as farming land to raise the crops as represented. Some of defendant's witnesses, however, testified that from 15 to 18 acres of the 40 were not high and dry, but constituted what was described as a swale, which ran through the center of the land, and would have to be drained to make it suitable for cultivation, and also 2 or 3 acres of creek head, covered with underbrush,

and which was low and unsuitable for cultivation. The defendant upon cross-examination testified, in part, as follows:

"*Q.* You had seen the property. had you?

"*A.* I had seen it.

"*Q.* You had seen this particular farm that was sold to him—farm No. 1?

"*A.* I had seen it; yes, in a general way.

"*Q.* I am speaking of this 40; did you tell him that this 40 was a high and dry 40?

"*A.* I do not know whether I did or not. I told him it was a good-looking 40.

"*Q.* Would you say that you did not?

"*A.* I would not say.

"*Q.* Did you tell him that every foot of this 40 could be cultivated?

"*A.* I do not remember whether I did or not.

"*Q.* If you did say that, was that true?

"*A.* Yes; it would be true, because every foot of that land can be worked. Every foot of it can be worked, if properly drained.

"*Q.* Did you tell him that he would have to drain 15 acres of this land before he could use it?

"*A.* I did not.

"*Q.* Now, if you had known that this was the condition of the land as shown by the surveyor, and that there were 15 to 18 acres that had to be drained before it could be cultivated, would you have told him that every foot of it could be cultivated?

"*A.* Not if I knew it beforehand.

"*Q.* You did not know it?

"*A.* I did not.

"*Q.* And it is a fact now?

"*A.* Well, that is according to the surveyors and according to that plat.

"*Q.* The surveyor says that there was 15 acres that would have to be tile drained, or drained before it could be cultivated?

"*A.* Yes, sir.

"*Q.* That is true, isn't it?

"*A.* Well, to a certain extent it is true."

There were some negotiations by telegraph looking

toward an exchange of the 40 acres described in the contract, for another 40, and an unsigned contract was sent to plaintiff by defendant for the former to sign. It was never signed, nothing came of it, and it was returned unsigned to defendant by plaintiff upon his return to Detroit. It was undisputed, and the defendant testified, that when plaintiff demanded the money back which he had paid, the defendant told him that he (defendant) did not have the money, but that the money had been sent to the company.

In submitting the case to the jury, the trial court charged them in part as follows:

"Now, gentlemen, you have heard the testimony of the various witnesses who have been called, and it is a question for you whether there was a misrepresentation made of a material matter with reference to the land in question, because unquestionably if there was a misrepresentation, as claimed by the plaintiff in this case, he would be entitled to tender back his contract to the agent from whom he had got it, and to demand, of course, the money back, and it is for you to say, having heard all of the testimony in this case, where the truth lies. * * *

"I have been asked to charge you that because Mr. McKenzie was the agent, and did not receive the money, that he would not be entitled to recover, but at the same time, gentlemen of the jury, Mr. McKenzie is bound personally by his own representations, and was the only party in the State of Michigan with whom the plaintiff ever came in contact, and I do not think the mere fact that he had turned over the money to the company would preclude the plaintiff in this case from prosecuting this action. * * *

"Now, if the plaintiff is entitled to recover, he is entitled to recover the sum of. $400, and interest from March, 1912, down to the present time, at the rate of 5 per cent. per annum."

The defendant has brought the case here assigning many errors, some of which we do not deem it neces-

188 Mich.—3.

sary to specifically consider. The following claims are covered by assignments of error:

(1) Neither Mr. McKenzie, the agent, nor the land company, the principal, was liable for all or any of the representations alleged to have been made.

(2) Defendant was the agent, and, having paid over the money to his principal, is not liable for a return of the money.

(3) The declaration does not allege, nor does the evidence show, that the contract was ever rescinded, or ever tendered back to the defendant; therefore in no event could the defendant be liable for the purchase money paid, either under the declaration or under the evidence.

1. We have held that, if any material fraudulent representation is charged which resulted in the injury to the plaintiff complained of, he is entitled, upon the proof of the same, to recover, although the declaration may have charged other acts which were not proven. *Wegner* v. *Herkimer*, 167 Mich. 587-594 (133 N. W. 623), and cases there cited. As we also said in that case, we cannot agree with appellant's counsel that all of the representations testified to were "seller's talk, pure and simple." Recognizing the rule that a seller has a right to praise his property and to give his opinion concerning it, we think that the rule cannot be extended to embrace false representations of alleged facts in a case, which may be and were relied upon by the purchaser, and became an inducing cause of the transaction. Manifestly, the representation claimed that the land was high and dry, and good agricultural land, without mire, swamp, or boggy portions, was a material representation of a fact within our numerous decisions. See collection of our decisions in the above-cited case on page 595 of 167 Mich. (133 N. W. 623) ; *Hall* v. *Car Co.*, 168 Mich. 634-641 (135 N. W. 118) ; *Allen* v. *Talbot*, 170 Mich. 664-668 (137 N. W. 97) ; *Pratt* v. *Circuit Judge*, 177 Mich. 558, 562

(143 N. W. 890) ; *Merlau* v. *Circuit Judge,* 180 Mich. 393 (147 N. W. 503).

We do not think the trial court erred in submitting the question as to the alleged fraudulent representations to the jury.

2. While we agree with appellant's counsel that there could not be a recovery here of the money paid by plaintiff in the contract, yet we are of the opinion that an action will lie against an agent for a fraud knowingly committed in behalf of a principal, even though the agent receives no personal benefit from the fraud. All persons who are active in defrauding others are liable for what they do, whether they act in one capacity or another. *Weber* v. *Weber,* 47 Mich. 562 (11 N. W. 389) ; *Angell* v. *Loomis,* 97 Mich. 5 (55 N. W. 1008) ; *Stoney Creek Woolen Co.* v. *Smalley,* 111 Mich. 321 (69 N. W. 722).

3. An examination of this record discloses the fact that the declaration does not allege, nor does the evidence show, that the contract was rescinded by the plaintiff, or that he ever tendered it back to the defendant. On the other hand, the plaintiff had it in his possession and offered it in evidence upon the trial. From aught that appears in this record, the plaintiff may still be claiming rights under the contract. The trial court seems, in its charge, to have recognized the necessity of a rescission, and yet a recovery was permitted without it. We are constrained to hold that it was reversible error for the court to charge the jury that the measure of damages in the case was the amount of money paid by the plaintiff, with interest thereon. In no event could that be the measure of damages under the declaration and the evidence. It is an elementary rule of law that, in order to recover the purchase price, the plaintiff must allege and prove a tender back, or an offer to tender back; in other words, he must first place the other party in *statu quo.*

*Galvin* v. *O'Brien,* 96 Mich. 483 (56 N. W. 85), and cases there cited.

The distinction between suing for damages in affirmance of a contract and suing to recover back the money paid is pointed out in *Patterson* v. *Kasper,* 182 Mich. 281 (148 N. W. 690). We are not here deciding that there could be no recovery in this case, but we are deciding that under the pleadings and evidence the measure of damages would not be the money paid and the interest thereon. The measure of damages in such a case, where there is no rescission, is the difference between the value of the premises had they been as represented and what they were actually worth. *Wegner* v. *Herkimer,* 167 Mich. 593 (133 N. W. 623).

We find no other reversible error in the record; but, for the errors pointed out, the judgment below is reversed, and a new trial granted.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case was originally assigned to the late Justice MCALVAY.