MONROE *v.* HICKOX, MULL & HILL CO.

1. SALES — EXPRESS WARRANTY — EXCLUSION OF IMPLIED WARRANTY.

Where, in a contract for the manufacture of machines, there is an express warranty that all the machines shall be like the sample, no other warranty can be implied.

2. SAME—FITNESS FOR SPECIAL PURPOSE.

Where a contract for the manufacture of machines provides that the manufacturer shall make the machines like a certain sample, and he expressly refuses to assume responsibility for the working of the machines, but agrees to make good any defects in workmanship or material when called upon, there is no implied warranty that the machines shall be fit for the purposes for which they are to be used.[1]

3. SAME—REMEDIES OF BUYER—ACTION FOR BREACH—CONDITIONS PRECEDENT.

Where a contract for the manufacture of machines provides that the manufacturer shall make good any defects in workmanship or material when called upon, no action will lie because of defective materials or workmanship until the manufacturer has been notified thereof, and given an opportunity to remedy the defects.

Error to Grand Traverse; Mayne, J. Submitted February 28, 1906. (Docket No. 210.) Decided April 30, 1906.

Assumpsit by John Monroe and others, copartners as the Traverse City Sprayer Company, against the Hickox, Mull & Hill Company for the breach of a contract to manufacture certain machines. There was judgment for plaintiffs, and defendant brings error. Reversed.

*W. P. Crotser* and *Smurthwaite & Alway*, for appellant.

*Pratt & Davis* and *Parm C. Gilbert*, for appellee.

---

[1] As to implied warranty of fitness of property bought for special purpose, see note to *McQuaid* v. *Ross* (Wis.), 22 L. R. A. 187.

BLAIR, J.  In February, 1904, the plaintiffs, copartners under the name of the "Traverse City Sprayer Company," entered into an agreement with the defendant, a corporation, for the manufacture by it of 100 spraying machines.  The contract contained, among other clauses, the following:

"We hereby propose to enter your order for 100 of your spraying machines complete, which includes attachments for both fruit trees and potatoes, as per sample submitted, at a price of thirty-two dollars ($32.00) each, net cash 30 days after date of shipment, it being understood that we will make any changes without additional charge where such changes do not increase our cost of manufacture. You, however, to pay us an additional price where any changes made by you will increase our cost of manufacture. * * * We agree to manufacture all machines like sample submitted, or as may be changed hereafter, according to clause 1 above, all to be done in a workmanshiplike manner, we to make good any defects in workmanship or material when called upon during the first season."

Plaintiff proposed an amendment to this contract before it was accepted and signed, as follows:

"It being specially agreed upon and understood that all machines manufactured under this contract *shall work equally as well as the machine submitted as a sample.*"

Defendant refused to accept this clause, saying in its letter:

"We cannot accept a condition that throws upon us the responsibility of all of the machines working equally as well as the sample submitted, as we will not have anything to do with the operation of the machines.  As manufacturers, the only thing that we can agree to do is to build the machine like the sample you submitted and apply in the construction of the machines good workmanship and materials, being perfectly willing to stand the responsibility of any defects in that particular on our part. It, therefore, would only be necessary to use the clause in the contract that we had in the other one covering this point."

Upon receipt of this letter, plaintiffs signed the contract in its final form containing the clause originally proposed by defendant.

The plaintiff copartnership was composed of the following persons, viz.: John Monroe, contractor, dock builder, etc.; Lawrence Doerr, inventor and patentee of spraying machine; Harold S. Kneeland, mechanical engineer; William Loudon, machinist and manufacturer of wagons, carriages, and sleighs; Benjamin Thirlby, William Thirlby, and William Calkins, all competent machinists, doing business under the name of Traverse City Iron Works; C. L. Greilick, engaged in lumber mill business; Arthur E. Wilson, contractor and builder; Dr. Kneeland, well posted in agricultural implements. Each member of the firm was a competent man about machinery.

It was agreed between the parties that Mr. Doerr, the inventor of the machine, should go to defendant's factory at Bowling Green, Ohio, and superintend the construction of one machine as a sample. Mr. Doerr went to the factory at Bowling Green about February 10, 1904, and remained there until about the 1st of March. The first machine was nearly completed when he left the factory. It was made up of the parts of the old machine as far as they could be used with the changes made. The frame and tongue were maple and beech and some of the castings were malleable iron. It is claimed by the plaintiffs that the machine built by Mr. Doerr was to be the sample or model machine, but this machine was shipped to plaintiffs for their use in making sales as soon as completed, about March 16, 1904. The machine the defendant's employés understood to be the sample machine was made entirely new and was almost completed when Mr. Doerr left the factory. Mr. Doerr testified upon this subject, as follows:

"In these conversations with the employés of the factory they expressed it in their judgment that southern pine would be better than maple or beech for these purposes, and they also said that the gray castings would be

sufficient for the purpose for which they were to be used on these machines, and I told them if they were sufficient to answer the purpose and the pine was better than hardwood, I had no objections to their being used. I was there for the purpose of superintending the construction of the sample machine and wanted the machine as quick as I could get it.   *   *   *

" When I came back from the factory the second time, I made report to the other plaintiffs in the case, telling them as near as possible how near the sample machine was done when I left and that everything was satisfactory to me as far as the sample machine was concerned. I told the plaintiffs about the use of the pine in the machines. I did not tell them anything about the cast iron because I did not know whether the cast iron would stand the test or not and had no idea whether they would be used. I told the employés of the defendant of what the sample machine was made and that I was the inventor of the machine and understood the mechanism of it and am accustomed to hardware and understand machinery and told the employés of the said defendant in talking about gray castings that if the things were strong enough I had no objection. I wanted a strong and durable built machine. · I told them that [if] cast iron was strong enough, its use was immaterial to me, and I had nothing to say about it. I told them I didn't think pine was as good as hardwood, but if it was as good I had no objection to its use. The sample machine was all I had anything to do with."

The defendant substituted, in constructing the machines, long leaf southern pine for maple and cast iron for certain malleable iron castings. The defendant shipped 25 of the machines April 2, 1904. They were examined by at least three of the plaintiffs, Kneeland, Doerr, and Loudon. Upon receipt and examination of the machines the plaintiffs wrote a letter complaining of defects in the machines, as follows: Bad painting, small cotter pins, pet cock not at 40 gallon mark, no bolts to fasten seats to frame and no connecting rods, various parts bunched together, requiring sorting to assemble the machines. The defendant promptly replied, explaining the cause of the defects mentioned, offering to make them good or pay the ex-

pense of doing so, and sending the parts by express that were missing. The missing parts were so forwarded and were received. No other complaint as to construction of machines was ever made, and no demands were ever made upon the defendant to make good any defects in workmanship or materials.

When Mr. Mull, defendant's president, met the plaintiffs in June and in August, he told them to make a list of the parts they desired and the defendant would send them. The plaintiffs received the first 25 machines about April 9th. On May 31st, they paid the defendant $1,000 on the contract. When Mr. Mull was at Traverse City, on June 25th, 51 machines had been shipped to plaintiffs and 44 were in defendant's warehouse at Toledo. It was then agreed that if on his return he would wire plaintiffs that the machines had all been shipped, they would pay $2,200 more. This covered the contract price, but not the bill for extra work. On July 1st the plaintiffs paid $1,000, and July 7th, $1,200.

Plaintiffs gave evidence tending to show that the machines did not work properly on account of the change of materials, and claimed that they were worthless. Mr. Mull testified that, if the defendant had been required to make good all the defects claimed by plaintiffs in these machines arising from changes in material used in construction or defects in workmanship, the cost to it would have been: For each clutch lever, not to exceed 10 cents. For each clutch, 12 to 15 cents. For each malleable iron crank shaft, 60 to 75 cents. For pitmans for each machine, 10 to 12 cents. For enlarging cotter pinholes, each machine, 10 to 15 cents. For maple or beech tongues, each, 80 to 90 cents. For axle boxes, each machine, 5 cents. For new platforms, maple or beech, each, $2.50. Total for each machine, $4.72.

If the fault had been solely that of the defendant, it could, under the contract, have supplied the defective parts in the same materials as were used on the old machine, for the entire 100 machines, for $472. No at-

tempt was made to deny this testimony, and no claim was made by any one that defendant had been requested to make good any defects in workmanship or material, other than the letter calling for certain bolts, and those were promptly sent by express.

Plaintiffs' declaration, after alleging that the parties entered into a written contract, whereby the defendant agreed to construct 100 machines according to a certain sample machine, which said sample machine was well and substantially constructed, the wood being of substantial hardwood, the metal part of said machine constructed of wrought, cast, and malleable iron and of sufficient strength, etc., to perform the services it was intended to perform, proceeds, as follows:

" That by the terms and conditions of said contract said defendant was under obligation to construct said 100 spraying machines in a good and workmanlike manner, and of the same material of the sample as furnished by said plaintiffs to said defendant, and as referred to in said contract. That said defendant, disregarding his contract and obligations in that behalf, did not manufacture said 100 spraying machines according to the terms and conditions of said contract; but, on the contrary, wholly failed and neglected to perform said contract; that in the attempted performance of said contract the defendant, in place of hardwood, used pine timber for the thills and in place of wrought and malleable iron, in many parts used cast iron, so that said machines when constructed were so poorly constructed and of such poor and weak material that said machines were wholly unsuitable for the purpose for which the same were constructed.

" That at the time said contract was entered into said defendant understood that said plaintiffs desired to sell said machines to farmers and others having use for a spraying machine, and that plaintiffs intended to engage in the business of selling such spraying machines and needed such machines as were provided for by the terms of said contract. That owing to the neglect and default of said defendant in the performance of said contract and owing to the fact that said defendant performed said contract in such a negligent, careless, and unskillful manner, and because said defendant failed to use such material,

wood, wrought, malleable, and cast iron as was required
by the terms of said contract, whereby and by reason.
whereof said plaintiffs were unable to sell said machines,
as they otherwise could and would have done; and that
owing to such failure on the part of defendant to perform
said contract according to its terms, a large number of
said machines which said plaintiffs had sold were rescind-
ed and said spraying machines were returned to said plain-
tiffs, whereby said plaintiffs sustained great damage."

At the outset, defendant's counsel objected to the intro-
duction of the contract in evidence for the reason that the
declaration did not count upon it but upon a different con-
tract, and at the close of the proofs, defendant's counsel
requested an instruction that the jury render a verdict of
no cause of action, which motion was based upon the
above reason and the following reasons:

"The second is: Whatever changes were made in the
material that went into the construction of these machines,
was done and made by an understanding between the
plaintiffs and the employés of the defendant, for which
the defendant is in no wise responsible. And, further,
that these machines were shipped to Traverse City after
the conversation between one of the plaintiffs and the em-
ployés of the defendant in regard to materials to be used
in the construction of the machines had been reported by
him, but whether reported by him or not, he was one of
the principals, and his acts would be that of a principal.
But they were shipped here and with every opportunity
to examine the machines and no payment had been made
until all had been manufactured and then payments to
the extent of $3,200 were made on the contract to the de-
fendant for the manufacture of these machines."

Defendant's counsel also requested the court to charge
the jury, as follows:

"Under the contract in the case, I charge you that the
only liability on the part of the defendant was to make
good any defects in materials or workmanship in the
manufacture of the machines. There is no claim that
plaintiffs requested the defendant to make good any de-
fects in the machines and, therefore, the plaintiffs cannot
recover."

The court refused to give this request and submitted the case to the jury. The reasons given by the court for overruling defendant's motion are as follows:

" The only question I can see on this motion is whether, under the wording of the contract, this clause. ' We agree to make . good any defects in workmanship or material when called upon during the first season,' is the exclusive remedy provided by the contract, or whether this is simply permissive, that they may do it, that they may make good any defects. Under the facts as shown in this case, I am not so inclined to hold. I think that it was optional with the buyer, that is, optional with the plaintiffs whether they would return them or whether they would bring their action at law, and the motion of the defendant is denied."

I think that the defendant's motion should have been granted. There was an express warranty in this case that all the machines manufactured by defendant should be like the sample, and in such case no other warranty can be implied. *McGraw* v. *Fletcher*, 35 Mich. 104. Apart from the general rule that an express warranty excludes an implied warranty, the facts of this case would conclusively negative the implication of a warranty that the machines should be fit for the purpose for which they were to be used. The defendant, in its letter rejecting plaintiffs' amendment to the proposed contract, expressly refused to assume responsibility for the working of the machines. The plaintiffs did not rely upon defendant's superior knowledge in the construction of the machine, but vice versa. Doerr was the inventor of the machine, and knew from experience about its working. The defendant knew nothing about the machine from practical experience, and undertook to construct it in accordance with the sample or model constructed by Doerr. The rule that manufacturers furnishing articles ordered for a specific purpose impliedly warrant that they are fit for that purpose has no application to the facts of this case.

I think it is clear, also, that the parties fixed the damages for a failure to perform the contract. Defendant, in

refusing to assume any responsibility for the working of the machines, expressly notified the plaintiffs of their construction of the language of the contract, viz. :

"As manufacturers, the only thing that we can agree to do is to build the machines like the sample you submitted and apply in the construction of the machines good workmanship and materials, being perfectly willing to stand the responsibility of any defects in that particular on our part."

The contract expresses the same meaning except that it limits the time when defendant could be called upon "to make good any defects in workmanship or material," to the first season. Under this contract, defendant had a right to be notified to remedy defective materials or workmanship before suit was brought against them therefor. *Sloan* v. *Wolf Co.*, 59 C. C. A. 612.

The judgment is reversed, and a new trial granted.

CARPENTER, C. J., and McALVAY, OSTRANDER, and MOORE, JJ., concurred.