HALL v. DUPLEX-POWER CAR CO.

1. SALES—WARRANTY BY IMPLICATION—CONTRACTS — EXPRESS AS EXCLUDING IMPLIED WARRANTY.

In an action for breach of an implied warranty of motor trucks, which proved to be worthless, any implied warranty of fitness was excluded by clauses in the written contract of sale providing for prompt replacement of all defective parts, and requiring the purchaser to make all claims on account of defective equipment not made by the seller to the respective manufacturers of such portions.

2. SAME—PAROL EVIDENCE RULE.

Evidence of an express warranty, not included in the writing, was incompetent.

3. SAME—FRAUD—FALSE REPRESENTATIONS—TRADE TALK — OPINIONS.

Evidence that the vendor told plaintiffs, who were inexperienced in handling motor trucks, that the cars had passed the experimental stage, that they were the best made and would do good work, and that the representations were false and induced plaintiffs to enter into the contract, tended to establish more than trade talk and warranted the submission to the jury of the question of fraud.

4. SAME—EVIDENCE.

All evidence, tending to prove that the trucks were not practicable and saleable as commercial machines, was competent evidence upon that issue.

Error to Eaton; Smith, J. Submitted December 15, 1911. (Docket No. 131.) Decided March 12, 1912.

Assumpsit by Eugene Hall and Clarence M. Hall, co-partners, against the Duplex-Power Car Company for damages for fraud and breach of warranty. A judgment for defendant on a verdict directed by the court is reviewed by plaintiffs on writ of error. Reversed.

*Elmer N. Peters*, for appellants.
*Frank A. Dean*, for appellee.

STONE, J.   The defendant is a Michigan corporation, and on November 27, 1909, was engaged in the business of manufacturing and selling automobile trucks, or motor trucks, at the city of Charlotte.   The truck manufactured by the defendant is what is termed a "four-wheel drive;" that is to say, the power to drive the truck applies to all four wheels.   On the day above stated the defendant entered into a contract with the plaintiff Eugene H. Hall for the manufacture and sale to him of two delivery cars and one passenger station car for the sum of $2,925.   Under this contract the cars were to be delivered to the purchaser f. o. b. cars at Charlotte, Mich., not later than December 10, 1909.   At the same time the defendant entered into what is termed a sales agency contract with said plaintiff, in which certain territory was assigned to the latter, in which he was to represent the defendant in selling the auto trucks manufactured by defendant.   The seventh and eighth clauses of said last-named contract were as follows:

"(7) That all claims on account of defective construction or material must be made by the party of the second part within sixty days after the delivery of the automobiles, and upon such parts being submitted to the party of the first part they will make prompt replacement, gratis, if upon examination by the party of the first part they are found to be defective.   Freight and express charges on all parts returned to the factory for credit or replacement shall in all cases be prepaid.

"(8) That all claims on account of defective equipment not manufactured by the party of the first part shall be made by the party of the second part to the respective manufacturers of such portions of equipment, and not to the party of the first part."

At the time these contracts were entered into, the three cars contracted to be sold were in the course of construction.   The plaintiff Clarence M. Hall was the partner of plaintiff Eugene H. Hall, in this transaction, and defendant's officers knew that both plaintiffs were interested in the contracts as partners.   Five hundred dollars were

paid down on said November 27th, and on December 10, 1909, a further payment of $1,500 was made on the purchase price, and a note of $925 was given for the balance, signed by both plaintiffs. The trucks were delivered on board cars at Charlotte, Mich., on or about December 10, 1909, and were shipped to Kansas City, Mo.

The plaintiffs gave evidence tending to show the following facts: That they were entirely inexperienced in the matter of driving, using, or handling motor cars of any description, and were entirely inexperienced in the matter of selling automobiles and automobile trucks; and that these facts were well known to the defendant's officers who negotiated the sale. The defendant's officers also knew, at the time of the contracts, where the trucks were going, and that they were to be used as demonstrating cars, to enable plaintiffs to take orders and make sales of other cars. Upon the arrival of the cars at Kansas City, they were unloaded and placed for storage and exhibition with the International Garage Company of that city, which was a suitable location. Although the plaintiffs were inexperienced, and known to be so, in handling the cars, they employed competent and experienced men for that purpose, one of whom was a man recommended to them by defendant's officers. It was the claim of the plaintiffs, and testified to, that the cars proved to be absolutely worthless for the purposes for which they were manufactured and sold; that they proved to be so faulty and poorly constructed and assembled that it was impossible to keep any one of them running a sufficient length of time to make a successful demonstration, or to effect a sale; that the workmanship throughout, in the matter of assembling, was so crude and unskillful as to render the machines valueless. There are a number of letters in evidence showing that plaintiffs kept defendant fully advised as to the situation, and of the fact that the cars were not standing up, but were defective. Within 60 days from the delivery of the cars to the plaintiffs, they returned from Kansas City to Charlotte, and went personally to

the officers of the defendant, and reported to them fully their troubles with the cars, and that they had become satisfied that the cars were absolutely worthless, and attempted to get a settlement, but were unable to do so, and thereafter brought suit.

The declaration contains four counts, three of which were based upon an alleged breach of an implied warranty, and one being for fraud and deceit. The plea was the general issue. At the trial, and before any evidence was introduced, counsel for defendant objected to the introduction of any evidence, because it appeared from the contracts, which were set up in the declaration, that there was no warranty, and that the alleged representations were not such as could be made a basis of an action for fraud and deceit. The court admitted the evidence at the time, but ruled later in the trial that the plaintiffs could not recover upon the ground of breach of warranty, in view of the seventh and eighth clauses in the contract above set forth, but allowed the evidence to go in, under the count for fraud and deceit. When the plaintiffs rested their case, counsel for defendant moved the court to instruct the jury to render a verdict for the defendant, upon the ground that the evidence on behalf of the plaintiffs would not warrant a recovery for fraud and deceit, and that plaintiffs' proofs failed to make out a case. The court thereupon directed a verdict for the defendant, and a judgment in its behalf followed.

The plaintiffs claim that there was ample evidence upon the question of fraud and deceit to have carried the case to the jury. In this connection they call attention to Exhibit A, which shows cut of Model A, Duplex-Power Cars, and the following printed matter:

"You can pay more but you cannot buy another delivery in America that can be depended upon to run the year 'round through mud, slush, and snow.

"This car will do more work than 2 horse-drawn rigs; with one less driver, costs less to maintain; quicker deliveries, well pleased customers. More of them.

"A ten-passenger bus that you won't have to leave in the garage because of the mud or snow.    Artillery wheels if you prefer them.

"This is the 1,000 ℔. capacity car that beat two double teams 4½ hours in a day's laundry delivery.    Making a total of 115 miles on 9½ gallons of gasoline.

"Not a car offered for sale until they had made good on every kind of road in this country and they never flunked.

"Remember, these cars are not assembled jobs, simply put up to sell to people who do not know the difference, but they are manufactured in our own plant, where nothing but commercial cars are built, by men who gave their entire time and thought to the construction of the best commercial cars ever produced in America."

Upon that subject the plaintiff Eugene H. Hall testified as follows:

"I think Exhibit A is the circular or part of the literature shown me at the time that we were negotiating for this purchase.    We closed the contract with F. A. Messler, who represented the defendant company.    He was secretary at that time; there were representations made to me as to these machines and as to whether they had been tested, quite a good many.    The representation was that they harmonized with their literature and that they were the best that were made.    They represented them to be the best cars that possibly could be made; they were satisfied in their own mind they would do what other cars would not do, do great stunts; that they demonstrated to us what they could do with the cars.

"Q. Any representations made as to the quality of the material in the cars?

"A. Yes, sir; I was down through their basement where they were cutting gears, and they represented everything was of first-class quality that could be obtained.

"Q. As to the matter of workmanship?

"A. That they employed only skilled workmen to assemble cars."

In response to the question, "Was there anything said whether these cars had been perfected, or that they were in condition to be placed on the market?" he testified:

" I know that was the climax, that they claimed they had passed their stage of experiments." On cross-examination this plaintiff testified :

"*Q.* You knew it was something of an experiment even at that ?

"*A.* No; it was represented to me that it had passed its stage of experiments.  *  *  *

"*Q.* What was it that they said to you that deceived you ?

"*A.* Well, they left me to believe it was past the experimental stage, and by these experiments we had with it there, it proved to be an utter failure, a complete failure.

"*Q.* Is that all they said or did to you that misled or deceived you ?

"*A.* That covered the whole proposition made, yes.

"*Q.* That is every statement they made that misled you, is it ?

"*A.* The statement was that these cars were perfect in every particular."

This witness further testified that upon his return to Charlotte, and at a conference with Mr. Messler—

" I told him (Messler) at that time that he represented to us that the cars were perfected, and had passed the experimental stage, and were capable of going out and doing all those stunts they were represented to do. He still made those claims. He thought the cars were all right; that it must be us. He never has denied to me that he had made those representations as to the quality of these cars. On the other hand, he claimed that the cars were exactly as represented. We claimed from our experience with those cars, that it was the general assembling of the cars which he had undertaken to put up that was imperfect. The parts we claimed would not work were parts we could not return. We claimed it was the assembling, the general construction of the cars, such as the main shaft being connected together in a manner, there was no part of it we could return here and no part we could send back. We claimed to him that the cars were generally deficient.  *  *  *  As I stated on cross-examination it was because of this claim that these cars were absolutely worthless, so fundamentally wrong they were a perfectly worthless thing, that we refused to accept their proposition made to us in writing.

"*Q.* Did Mr. Messler in making these representations to you merely state his thought or belief that these cars were as represented, or did he state these things as positive facts?

"*A.* He stated them to be positive facts."

The witness Clarence Hall testified to the same effect.

Morris Bollstrom, who was the inventor of the four-wheel drive, and a stockholder in defendant company, testified that he knew the representations made by Mr. Messler regarding these cars: it was that the cars had as a class been brought beyond the experimental stage; that it was certainly represented by him (Messler) that these cars had been developed to the stage that they were a salable machine, and ready to go on the market; that he remembered very distinctly the occasion of the sale of the cars to the plaintiffs; that he was present practically all of the time when the plaintiffs were negotiating with Mr. Messler regarding the transaction; that these cars were not to his satisfaction developed so that they were ready to be placed upon the market; that he protested against making a sale of any of them; that it was a patchwork job made in skeleton form, a little insertion here, a little insertion there, material here and there that was absolutely unsatisfactory to him, either as a sample or straight commercial salable proposition. He further testified that the cars of the class sold the plaintiffs had not stood practical tests in operation and use, and that he knew of their having been returned. There was other testimony to the same effect.

The plaintiffs have brought the case here by writ of error, and they assign error upon certain rulings of the court relating to the admission of evidence, and upon that part of the charge and ruling that the plaintiffs could not rely upon an implied warranty, and upon the direction of the verdict for the defendant.

Upon the subject of implied warranty, we are of opinion that the case is ruled by *Monroe* v. *Hickox, Mull & Hill Co.,* 144 Mich. 30 (107 N. W. 719). We think defend-

ant's counsel are correct in the claim that there can be no
implied warranty when one is expressed; that the under-
taking of the defendant to replace promptly all defective
parts constituted a warranty within the doctrine of the
case above cited.   Section 7 of the contract defined the
liability of the defendant, and excludes an implied war-
ranty.

Another difficulty with plaintiffs' position upon this
branch of the case is that the evidence offered tended to
show by parol an express warranty, other than that con-
tained in the contract.   This, we have held, cannot be per-
mitted.   We find no error in the ruling relating to an
implied warranty.

We are of opinion, however, that the court should have
submitted the case to the jury upon the question of fraud
and deceit, and that it was error to direct a verdict for
the defendant.   Bearing in mind the nature of the repre-
sentations testified to, and the entire inexperience of the
plaintiffs in handling automobiles of this or any other
kind, and the testimony tending to show the falsity of the
representations, we must hold that there was sufficient
evidence introduced, in support of the count for fraud and
deceit, to entitle the plaintiffs to go to the jury upon this
question.   If it is a fact that these statements were made,
and were relied upon by the plaintiffs, and induced plain-
tiffs to enter into the contract, and were false in fact, it is
immaterial whether Mr. Messler believed them true.
*Krause* v. *Cook*, 144 Mich. 365 (108 N. W. 81).

We cannot agree with counsel for the defendant that
the statements testified to constituted mere " trade talk,"
and did not amount to material representations relied
upon by the plaintiffs.   See *Wegner* v. *Herkimer*, 167
Mich. 587 (133 N. W. 623), and cases there cited, bear-
ing upon this subject.

Referring to the assignments of error relating to rulings
upon the admissibility of evidence, it is sufficient to say
that any competent evidence relating to the representations

made by defendant's officers to the plaintiffs in the course of the negotiations, and any competent evidence tending to show that at the time of making the contracts in question the cars had not reached a point where they were practicable and salable as commercial machines, was admissible and should not have been excluded.

We do not think that upon another trial these questions will arise, in view of what we have said upon that subject.

For the error pointed out, the judgment of the circuit court is reversed, and a new trial granted.

STEERE, BROOKE, BLAIR, and OSTRANDER, JJ., concurred.