POTTER *v.* SHIELDS.

1. SALES—WARRANTY—CONTRACTS.
   No warranty of fitness could be implied as to a boiler that defendant installed in plaintiff's residence, expressly refusing to guarantee any boiler installed with the existing system of piping in the house.

2. SAME.
   Nor would any other warranty be implied if, as claimed by plaintiff, the defendant expressly warranted the boiler to be as good as another kind mentioned.

3. EVIDENCE—PAROL TESTIMONY—SALES.
   The contract consisting of a written proposition accepted orally by plaintiff, and not including all the terms, was not governed by the parol evidence rule and plaintiff could show an express warranty by parol evidence.

4. DAMAGES—INSTRUCTIONS TO JURY.

It was insufficient to instruct the jury as to the damages, "You will have to rely again on the evidence that is before you. How much was plaintiff damaged, if he was damaged at all? You have heard the testimony; as reasonable, honest, intelligent men you would have to decide that, if you come to that point." More explicit instructions should have been given.

Error to Ingham; Collingwood, J. Submitted November 21, 1912. (Docket No. 80.) Decided March 20, 1913.

Assumpsit in justice's court by James W. Potter against Thomas J. Shields and another for breach of warranty of a steam boiler. From a judgment for defendants, plaintiff appealed to the circuit court. Judgment for plaintiff, defendants bring error. Reversed.

*Frank L. Dodge*, for appellants.

*Cummins & Nichols*, for appellee.

KUHN, J. The plaintiff is the owner of a house in the city of Lansing which had a steam-heating system with about 550 feet of radiation. Desiring to install a boiler of greater capacity than the one then in use, in the winter of 1910, he examined a boiler known as the Ideal No. 046, manufactured by the American Radiator Company, and which was in the home of Richard Scott in said city, to which was attached at that time about 600 feet of radiation. Wishing to install "a duplicate of the Scott job," he applied to the defendants for a price to furnish and install the same, and in reply he received the following letter:

"LANSING, MICHIGAN, July 1, 1910.
"J. W. POTTER, Lansing, Michigan.
"DEAR SIR:
"We will furnish and install a No. S-25-5 Ideal Sectional Steam Boiler as manufactured by the American Radiator Company of Chicago, complete, for the sum of $213.60. This includes disconnecting the old boiler now

in place, cleaning and piping brick in the cellar, making proper connections from steam mains and returns, and new boiler covered with asbestos cement 1½ inches thick.

The 046 Ideal Steam Boiler, same as installed in Mr. Scott's residence, is not manufactured only on request. The No. S–25–5 taking its place, but same can be had at an additional cost of $55 to the above price.

"Yours respectfully,
"SHIELDS & LEADLEY."

It is claimed by plaintiff that after receiving this letter he had a conversation with Mr. Leadley, in which he objected to anything but the 046 boiler, and that Mr. Leadley said:

"The 25 is being made to take its place, and is an improvement on the 046, and you had not ought to hesitate about buying it."

This is denied by Leadley.    Plaintiff says he made no further investigation of the boiler, but, relying upon this claimed statement, gave the defendants the order, and the boiler was promptly installed and the work paid for.

It is further claimed that the boiler did not give satisfaction, would not make steam and heat the house satisfactorily, and, after notifying the defendants and giving them an opportunity to make the boiler work satisfactorily, the plaintiff had it removed from his house, sold it for $75, retained some of the fittings, and reinstalled the old one.

Suit was brought in the justice's court, and on appeal to the circuit court the case was tried by a jury, and the plaintiff had a verdct in the sum of $81.10.    Judgment being had thereon, the case was brought here by writ of error.    Counsel for defendants assign 89 errors.

The first serious question that presents itself in examining the charge of the court is that the judge submitted to the jury the question of an implied warranty.    He said:

"I will say, in regard to an implied warranty, that when a dealer, knowing that a purchaser is relying upon his skill and judgment, and knowing that the purchaser himself is ignorant as to the fitness and suitability of the article which he is offering for sale, sells the article to

him, he is held, as a matter of law, impliedly to warrant the article to be reasonably fit and suitable for the purpose for which he knows it was intended. * * * If you find that the plaintiff bought this boiler, and that the defendant sold it to him believing that the plaintiff had told him that he knew nothing about boilers, and that defendant had given him an implied warranty in regard to the boiler's being fit and suitable, and the boiler was not fit and suitable, then there would be damages. Now, the question as to whether it is fit and suitable is a question of fact for you; you have heard all the testimony; you are to determine that."

There can be no question that there might be an implied warranty that a boiler is reasonably fit and suitable for the purposes for which it is intended to be used. Nevertheless, it is well established that there can be no such implied warranty where the seller has expressly refused to give a warranty. 35 Cyc. p. 393; *Burnett* v. *Hensley*, 118 Iowa, 575 (92 N. W. 678); *Lynch* v. *Curfman*, 65 Minn. 170 (68 N. W. 5).

The plaintiff testified that at the time Leadley came to his house, a few days before he received the letter of July 1st, in order to inspect the premises, he said that he would not guarantee any boiler installed under the system of piping in the house. Leadley testified with reference thereto:

"I looked around in the basement. I saw the piping, and asked him if he had ever had any trouble with his heating plant. He said, 'No.'

"*Q.* He said he had no trouble?

"*A.* Yes, sir. 'Well,' I says, 'I would not guarantee a boiler installed under the present conditions of piping in your house.'

"*Q.* You would not guarantee it?

"*A.* Yes, sir; I told him that before I made any figures on changing.

"*Q.* At his house?

"*A.* At his house; right down cellar.

"*Q.* Did you at any time guarantee to heat his house?

"*A.* No, sir."

This completely negatived the idea of an implied warranty and eliminated it from the case, and it should not have been submitted to the jury.

The theory upon which this case was tried by plaintiff was that there was a guaranty which entitled him to have either a boiler as good or better than the 046; and that this representation and guaranty was made in the conversation which plaintiff testified to, subsequent to the receipt of the letter.    As it is claimed that there was an express warranty that the boiler should be as good as some other boiler, no other warranty can be implied on the same or closely related subjects.    35 Cyc. p. 392; *Monroe* v. *Hickox, Mull & Hill Co.*, 144 Mich. 30 (107 N. W. 719); *Hall* v. *Car Co.*, 168 Mich. 634 (135 N. W. 118).

It is claimed that the evidence tending to show by parol an express warranty was improperly admitted, because the contract is in writing, and the general rule is relied upon that, where parties have reduced to writing what appears to be a complete and certain agreement importing a legal obligation, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the whole of the agreement between the parties; and parol evidence of prior, contemporaneous, or subsequent conversation, representations, or statements will not be received for the purpose of adding to or varying the written instrument.    It may be conceded that if such a writing exists between the parties, and it contains no warranty at all, no express warranty can be added by parol; and if it contains a warranty parol evidence would not be admitted to extend, enlarge or modify that which the writing specifies.    2 Mechem on Sales, par. 1254.

However, in the instant case, the contract relied upon consists of a letter written by defendants and its alleged acceptance in an oral conversation.    It cannot be claimed that the written instrument is the completed contract; and it has been repeatedly held that in such a case parol evidence may be had to show that a warranty constituted a part of the contract.    The rule, as stated by Mr. Mechem

in his work on Sales, vol. 2, par. 1255, referred to above, is as follows:

"Where, however, the writing does not purport to be final and complete, as where it contains but part of the contract, or is a mere order for the goods, or a mere receipt, bill of sale, bill of parcels, or the like, and the writing, whatever it may be, is silent upon the subject of a warranty, parol evidence that a warranty constituted part of the contract may be received. *A fortiori* it may be received where the writing was really not part of the contract at all."

It is the claim of the plaintiff that, before the offer made in the letter was accepted, the conversation with reference to the warranty was had; and that because of this representation the offer was accepted. Under this state of facts it was the duty of the court to submit to the jury the question of an express warranty. Our attention is challenged to the case of *Detroit Shipbuilding Co.* v. *Comstock*, 144 Mich. 516 (108 N. W. 286); but the case is distinguishable from the one now under consideration, because in that case the contract was reduced to writing and signed by the parties. No warranty being found in the contract, this court held that no evidence could be shown of a parol warranty. See, also, *McCray, etc., Storage Co.* v. *Woods & Zent*, 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599).

On the question of the measure of damages, the court said:

"Now, if you come to the question of damages, you will have to rely again on the evidence that is before you. How much was plaintiff damaged, if he was damaged at all? You have heard the testimony; as reasonable, honest, intelligent men you would have to decide that, if you come to that point."

It is urged that this was not sufficient, and that the court should have given the jury some rule to guide them on this branch of the case. The measure of damages that the plaintiff was entitled to, if any, could easily have been outlined to them, and more explicit instructions should

have been given the jury with reference thereto, as, under the instruction given, the jury was allowed to speculate upon this element of the case. *Howe* v. *North*, 69 Mich. 272 (37 N. W. 213).

The judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.