ALLEN *v.* TALBOT.

1. FRAUD—VENDOR AND PURCHASER—TITLE—INCUMBRANCES.
  Fraud, authorizing the rescission of a contract for the sale of a farm, appeared from the testimony of complainants that the vendor represented he had a clear title, when, in fact, he had only a contract equity, subject to two mortgages, both overdue.

2. SAME—RESCISSION—INCONSISTENT CONDUCT.
  Complainants' delay in declaring the contract rescinded was excused by their want of knowledge of the true state of defendant's title, and by the fact that defendant promised for some time to furnish an abstract of title, which complainants finally procured at their own expense, and learned the real condition; the fact that complainants negotiated for a new contract, which was never executed or agreed upon, was not such inconsistent conduct as to preclude their right to rescind.

3. VENDOR AND PURCHASER—ACCOUNTING.
  In a suit to rescind a land contract for fraud of the vendor, the vendees must account for the reasonable rental value of the premises while they had possession.

Appeal from Oakland; Smith, J. Submitted June 6, 1912. (Docket No. 37.) Decided July 10, 1912.

Bill by George Allen and another against Cash W. Talbot for the rescission of a land contract. From a decree for complainants, defendant appeals. Affirmed.

*Jay Fuller*, for complainants.

*Ralph B. Wilkinson*, for defendant.

STONE, J. The complainants are husband and wife. They filed their bill of complaint to have a certain land contract made to them as purchasers by the defendant as vendor on April 27, 1910, declared null and void by reason of fraud practiced upon them by the defendant in

fraudulently misrepresenting to them the condition of the title to and character of the land in question.

It appears that at the date above stated the defendant was the owner of an equity in a farm of 40 acres of land in the township of Royal Oak, in Oakland county. Defendant's interest in this farm was evidenced by a certain land contract which he had entered into on February 1, 1910, with one Andrew Rinkey and wife, in and by which the latter agreed to convey to defendant the land in consideration of $4,000, to be paid as follows: $1,136.59 paid at the date of the contract, and the remaining $2,863.41 to be paid in payments of $15 or more per month, interest payable every six months at 6 per cent. until due, and 8 per cent. thereafter. When the principal sum should be lowered to $1,200, being the amount of a certain mortgage held by the Oakland County Savings Bank of Pontiac, the parties of the first part to said contract should give defendant a deed of the premises, and defendant was to receive a deed subject to said mortgage. The undisputed evidence shows that there were two mortgages on said farm held by said savings bank, one of $1,000 dated July 14, 1906, due one year after date, and another of $250, dated July 5, 1907, payable three years after date, both bearing interest at 6 per cent. per annum.

Such being the condition of defendant's interest in the said farm, it is the claim of the complainants that he approached them in March, 1910, in the city of Detroit, where all of the parties then lived, and fraudulently and corruptly represented to them that he was the owner of said premises, that he had a warranty deed of the same, that his title thereto was perfect of record, that the same was free from all liens and incumbrances, that, if they would purchase it, there would be no other parties interested therein, and that the land was first-class land for crops, and that the soil was a sandy loam with a clay subsoil, and suitable for raising grains and farm products of all kinds. Complainants further claim that they were wholly unacquainted with farming and the value of farm

lands; that they did go upon the lands, but that the ground was in a frozen condition, and, because of their ignorance of such matters, they were unable to form any correct judgment as to the condition or quality of the soil; that, relying upon the representations of the defendant, who advised them not to consult a lawyer in the matter, they were induced to enter into a contract for the purchase of said premises for the agreed price of $3,900, agreeing to pay $200 on the execution and delivery of the contract, and the remainder in payments of $30 or more per month, with interest at the rate of 6 per cent. per annum to be deducted from the monthly payments until the whole sum should be paid. Complainants moved onto the farm in May, 1910. It is their claim that the land was practically worthless for farming purposes, and that they were unable to raise any crops that would pay for harvesting. Complainants made their monthly payments down to and including the month of November, 1910.

In the month of December, when they went to pay the taxes on the farm, the complainants claim that they discovered that the lands were assessed to Rinkey. They paid the taxes, and then made inquiry about some fire insurance premium that they had learned was due on the buildings, and were informed that they had no insurable interest in the buildings, and that the insurance was in Rinkey's name. They claim that this made them suspicious about the state of the title, and that they applied to the defendant for an abstract of title, which he promised from time to time to get for them, but never did. After waiting in vain some weeks for the promised abstract, complainants finally obtained one themselves, which showed the true condition of the title. Upon defendant learning what had been done, complainants claim that he became very angry, and, as they were then in arrears in their monthly payments, he served notice of forfeiture of the contract, and it is undisputed that he commenced summary proceedings to get possession of the farm, which proceedings were pending when the bill in this cause was filed.

The defendant by his answer denied all fraud and fraudulent representations, and claimed the benefit of a cross-bill, and prayed that his land contract be foreclosed, the premises sold, and that complainants be decreed liable for any deficiency there might be due him thereon. All of the parties testified at the hearing, and the testimony was taken in open court as in a suit at law. There was a sharp conflict in the testimony of the parties on most of the material questions. The defendant denied that he made any representations as to the state or condition of the title, and testified that nothing was said upon the subject  The latter claim seems to us improbable. The complainants testified in support of their claim, and that they had actually paid on the contract $370 and $17.09 in taxes. They also testified that they had expended in improvements on the farm, including manure hauled and spread, $187.80. This last sum also included interest on the money paid on contract at time of purchase. They also made claim of $40 and $2.40 of interest, being the amount of a balance due on a note of $50 given by them for a part of the cash payment on the contract, upon which note suit had been brought by defendant as plaintiff and a judgment entered against them therefor.

The circuit court entered a decree for the complainants declaring the contract null and void, for fraud, and vacating and setting the same aside and dismissing the cross-bill. It also adjudged that defendant should pay to complainants $525 and interest from the date of the decree, being for the amount paid by complainants on said land contract, and for improvements made by complainants on said premises, together with complainants' costs to be taxed, and awarded execution therefor.

The defendant has appealed. He contends in this court that it is not conclusively shown that complainants were deceived by any representations made by defendant as to his title to the property. We are of opinion that the circuit judge reached the correct conclusion upon that branch of the case. Not only did the circuit judge have the superior

advantage of seeing and hearing the witnesses testify, but we are of opinion that by a clear preponderance of the evidence it appears that such representations were made by defendant, and were relied upon by complainants, and that such representations were material representations of alleged facts.

Instead of having a perfect title to this land in fee as represented, the defendant had an equity, in peril of being foreclosed and cut off by an overdue mortgage. At most, he gave complainants an equity of an equity, liable to be cut off by two mortgages, both overdue at the time of hearing. Not only is this true, but defendant had agreed to accept a deed from his grantor subject to and agreeing to assume those mortgages. That such representations of condition of title were material has been repeatedly held. See collection of authorities in *Wegner* v. *Herkimer*, 167 Mich. 587–595 (133 N. W. 623). It is contended by defendant that this representation as to condition of title is no ground for rescission of the contract, and he cites *Silfver* v. *Daenzer*, 167 Mich. 362 (133 N. W. 16), in support of such claim. We think that the case is readily distinguished. Here fraud is charged and proven. There no fraud was claimed, and it appeared that the contract was made in good faith, and the defect was susceptible of being easily perfected, and, by the undisputed testimony, would be perfected by decree in a case then pending for that purpose.

It is also claimed by defendant that complainants by their conduct are entitled to no relief; that they remained in possession and were content until they got in arrears in making the monthly payments; and that they made application to defendant for a new contract after knowledge of all the facts. We cannot agree with this contention. Complainants got in arrears while they were waiting for the promised abstract. After they learned the true condition of the title, it is true that there was some talk leading to a new contract, which was never entered into. Upon the precipitate action of the defendant to de-

clare the contract forfeited, and to get possession, the complainants promptly filed this bill. We do not think that they were guilty of laches, or inconsistent conduct.

We think, however, that defendant should be allowed for the rental value of the premises while occupied by complainants. We understand that they have left the land. There was evidence of its rental value. We think that the decree should be so modified as to allow defendant $125 for the use of the land while occupied by complainants, and that the judgment on the $40 note should be discharged by the defendant. The amount of complainants' recovery against defendant will be $400, instead of $525. The decree will be modified as herein indicated, and will stand affirmed in all other respects, including costs to complainants in the court below. The defendant will recover his costs of this court.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.